0532

Richard S. ARVAI and Ellen Arvai, Appellants, v. Jack E. SHAW and Jack E. Shaw Builders, Inc., Respondents.

(334 S. E. (2d) 287)

Court of Appeals

*Roger L. Couch* of *Henderson, Lister, Couch & Brandt, P.A.*, Spartanburg, *for appellants.*

*Jefferson V. Smith, Jr.* of *Carter, Smith, Merriam & Rogers,* of Greer, and *Ellis M. Johnston, II* of *Haynesworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondents.*

Heard May 29, 1985.

Decided Aug. 6, 1985.

GOOLSBY, Judge:

In this negligence and breach of warranty action, Richard S. Arvai and Ellen Arvai appeal from a circuit court order granting summary judgment in favor of the respondents Jack E. Shaw and Jack E. Shaw Builders, Inc. We affirm.

Although this appeal involves a number of issues, we need only address the question of whether an implied warranty extends to subsequent purchasers of a house not built for speculative sale.[1]

In October, 1970, Shaw Builders became the owner of an unimproved lot of land in Greenville, South Carolina. A month later, Shaw Builders contracted with Thomas and Margaret Farr to build a house on the property. After conveying the property to the Farrs, Shaw Builders built the house in accordance with plans and specifications supplied by the Farrs.

Sometime later, the Farrs reconveyed the house to Shaw Builders who, on November 15, 1971, sold the house to James and Frances Semones. The Arvais acquired the property from the Semoneses on September 28, 1976.

Six days after the Arvais moved into the house, they experienced flooding from a creek located at the rear of the property. Fifteen inches of water entered the utility room, garage, and basement areas. Since that date, they have experienced additional flooding.

In November, 1981, the Arvais commenced the present action against Shaw and Shaw Builders. They allege in one cause of action that Shaw and Shaw Builders breached an implied warranty of merchantability and fitness for the intended purpose of habitability in that they built the house in an area subject to frequent flooding and designed the house in such a manner as to increase damage from flooding. The Arvais allege in another cause of action that Shaw and Shaw Builders negligently constructed the house in that they built it in an area they knew was subject to frequent flooding and they built it in a manner that either failed to protect it from flooding or increased the likelihood of damage from flooding.

Shaw answered and later moved for summary judgment which the circuit court granted. In dismissing the complaint,

---

[1] One of the Arvais's exceptions questioning the circuit court's holding that the complaint fails to state a cause of action refers to "negligence and/or breach of warranty;" however, they nowhere argue in their brief the sufficiency of their negligence cause of action. We therefore do not address the issue. *See State v. Sullivan*, 277 S. C. 35, 282 S. E. (2d) 838 (1981), *Cudd v. John Hancock Mutual Life Insurance Co.*, 279 S. C. 623, 310 S. E. (2d) 830 (Ct. App. 1983).

the circuit court found, among other things, the house was not built for speculative sale and its alleged defects concerned not its construction, but its location.

This appeal followed.

In *Terlinde v. Neely*, 275 S. C. 395, 271 S. E. (2d) 768, 10 A.L.R. 4th 379 (1980), a case involving a speculative house, our Supreme Court held that an implied warranty for latent defects extends to subsequent purchasers for a reasonable period of time. *Terlinde* is the last in a series of cases by which this state moved away from the doctrine of *caveat emptor* in the sale of residental real estate. *See Frasher v. Cofer*, 251 S. C. 112, 160 S. E. (2d) 560 (1968); *Rogers v. Scyphers*, 251 S. C. 128, 161 S. E. (2d) 81 (1968); *Rutledge v. Dodenhoff*, 254 S. C. 407, 175 S. E. (2d) 792 (1970); *Lane v. Trenholm Building Co.*, 267 S. C. 497, 229 S. E. (2d) 728 (1976); *Contracts, Annual Survey of South Carolina Law*, 33 S. C. L. Rev. 33 (1981).

Prior to World War II, the doctrine of *caveat emptor* governed most sales transactions. *See Contracts, Annual Survey of South Carolina Law*, 33 S. C. L. Rev. 33, 34 (1981); Hamilton, *The Ancient Maxim of Caveat Emptor*, 40 Yale L. J. 1133 (1931).

> In the nineteenth and early twentieth centuries, most of the housing starts were done on a one-to-one basis, with the buyer personally selecting a contractor, who then constructed the building according to the buyer's instructions or specifications. This meant that instead of purchasing his home already built, as is the common practice today, the buyer had the house made to order and could supervise all states of construction. Generally, the payment for this type of building was done on an installment basis as the construction progressed, with final payment only after the house was completed to the satisfaction of the purchaser. In essence, a balance was struck between the builder and the buyer, whereby each had certain definitive safeguards for their respective interests.

Maldonado, *Builder Beware: Strict Tort Liability for Mass-Produced Housing*, 7 Real Eastate L. J. 283, 286-87 (1979).

It was not until the end of World War II, when there was an upsurge in the need for housing, that a "new breed of

superdeveloper" was able to build a large number of houses on speculation. *Id.* The sale of mass-produced homes to unwary consumers who were unable to supervise their construction brought about the decline of the doctrine of *caveat emptor.*

Here, however, a speculative-built house is not involved. Rather, it is a house built, as we mentioned, according to owner-supplied plans and specifications. In this respect, then, the situation is one similar, if not identical, to the construction practice commonly followed before World War II.

The Supreme Court in *Rutledge* distinguished "between the usual, normal sale of lands and old buildings and a transaction where the vendor is also the builder of a new structure." 254 S. C. at 413, 175 S. E. (2d) at 794. We likewise make a distinction between a case involving a speculative-built house and one involving a house built pursuant to plans and specifications provided by the owner. In the latter case, which is the case here, we hold there exists no implied warranty for latent defects. *See Rutledge v. Dodenhoff, supra; Frasher v. Cofer, supra.*

Accordingly, the order of the circuit court is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.