0626

James R. McGANN, Denise C. McGann, Timothy P. Finn, Mary Earle Finn, Patrick J. Carberry, Judith Ann Carberry, Janice B. Shaw and Georgia D. Goodwin, Individually and on behalf of all others similarly situated, Respondents v. Michael J. MUNGO, Individually, Michael J. Mungo Co., Inc., South Carolina Federal Savings and Loan Association, First Service Corporation of South Carolina, The County of Lexington, Roy J. Frick, Jerrod F. Howard, Russell B. Shealy, J. Wade Kleckley, Alvin J. Neal, Art Guerry, Lowell C. Spires, Jr., Bruce L. Merchant, and J. Carl Spires, in their official capacities as members of Lexington County

Council, the governing body of Lexington County, South Carolina, and The City of Columbia, Defendants, of whom Michael J. Mungo, Individually, Michael J. Mungo Co., Inc., First Service Corporation of South Carolina, The County of Lexington, Roy J. Frick, Jerrod R. Howard, Russell B. Shealy, J. Wade Kleckley, Alvin J. Neal, Art Guerry, Lowell C. Spires, Jr., Bruce L. Merchant, and J. Carl Spires, in their official capacities as members of Lexington County Council, the governing body of Lexington County, South Carolina, are Appellants.

(340 S. E. (2d) 154)

Court of Appeals

See also 578 F. Supp. 1413.

*George I. Alley,* of *Kirkland, Aaron & Alley, Frederick A. Gertz,* of *Gertz & Moore, Robert W. Dibble* and *Martha P. McMillin,* both of *McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, Edward M. Woodward, Jr.,* of *Woodward & Unger, Wilburn Brewer, Jr.* and *Susan Batten Lipscomb,* both of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, and *Archie L. Harman, II,* of *Rawl, Purcell & Harman,* Lexington, *for appellants.*

*George W. Cox, Jr., C. Joseph Roof,* and *Alva M. Lumpkin,* of *Lumpkin & Sherrill,* Columbia, *for respondents.*

*James S. Meggs,* Columbia, *for defendant, The City of Columbia.*

Heard Dec. 9, 1985.

Decided Feb. 3, 1986.

GOOLSBY, Judge:

This appeal by the defendants Michael J. Mungo, Michael J. Mungo Co., Inc., and First Service Corporation of South Carolina, the County of Lexington, South Carolina, and Roy J. Frick, Jerrod R. Howard, Russell B. Shealy, J. Wade Kleckley, Alvin J. Neal, Art Guerry, Lowell C. Spires, Jr., Bruce L. Merchant, and J. Carl Spires in their official capacities as members of the Lexington County Council is from an order overruling their demurrers to certain causes of action alleged in the amended complaint of the plaintiffs James R. McGann, Denise C. McGann, Timothy P. Finn, Mary Earle Finn, Patrick J. Carberry, Judith Ann Carberry, Janice B. Shaw, and Georgia D. Goodwin. We affirm in part and reverse in part.

The issues addressed herein relate to misjoinder, class actions, and sufficiency of the pleadings.

According to the amended complaint, Coldstream is a residential subdivision in Lexington County, South Carolina, developed by Mungo, Mungo Co., Inc., and First Service Corporation. Development of the subdivision included plan-

ning and constructing Coldstream's streets, drainage systems, water supply systems, sewer systems, and other utilities. Lexington County and the County Council allegedly aided the developers in their development of Coldstream.

The plaintiffs brought this action on behalf of themselves and as representatives of a class alleged to consist of all other residents and owners of improved residential properties in Coldstream. Their amended complaint, comprised of seven causes of action, seeks the recovery of $5,000,000 in actual and punitive damages for the alleged unconstitutional taking of their properties, for the alleged negligent design and construction of the subdivision's streets and drainage systems, and for the alleged breach of an implied warranty that the plaintiffs' properties and Coldstream's streets and drainage systems were fit for their particular purposes. The amended complaint also seeks injunctive relief.

The defendants each demurred to the amended complaint's several causes of action. The circuit court sustained the county defendants' demurrers to all but the fifth cause of action and sustained the developers' demurrers to all but the first, third, fifth, and sixth causes of action.

## I.

The defendants first contend the circuit court erred in overruling their demurrers to all causes of action. Their demurrers assert the amended complaint improperly unites several causes of action because the causes of action do not affect all the parties to the action, including members of the alleged class. *See* S. C. Code of Laws § 15-15-10 (repealed 1985); *Ryder v. Jefferson Hotel Company*, 121 S. C. 72, 113 S. E. 474 (1922); *Dockside Association, Inc. v. Detyens, Simmons and Carlisle*, 285 S. C. 565, 330 S. E. (2d) 537 (Ct. App. 1985), *affirmed as modified*, _____ S. C. _____, 337 S. E. (2d) 887 (1985).

The amended complaint unites several causes of action jointly brought by the eight plaintiffs on behalf of themselves and the alleged class. It is apparent from the amended complaint that the plaintiffs base their claims and the

claims of the alleged class on the damages allegedly sustained by their separate residential properties and motor vehicles.

Since the date of the determination by the circuit court of the issues raised by the defendants' demurrers, the statute on which the defendants relied before the circuit court, Section 15-15-10 of the South Carolina Code of Laws (1976), has been repealed [*see* 1985 S. C. Acts 100] and a new rule governing joinder of claims has been adopted. *See* S.C.R.CIV.P. 18(a); H. LIGHTSEY & J. FLANAGAN, SOUTH CAROLINA CIVIL PROCEDURE at 171, 190 (2d ed. 1985). Under Rule 18(a), there no longer is a requirement, as there was under Section 15-15-10, that "the causes of action so united . . . affect all the parties to the action." LIGHTSEY & FLANAGAN, *supra*, at 171, 187.

As a general rule, the repeal of a statute authorizing a particular defense operates to deprive a defendant in a pending action of the defense even if the defense has already been raised. 82 C. J. S. *Statutes* § 439 at 1013 (1953). Thus, the express repeal of Section 15-15-10 serves to deprive the defendants of the defense of improper joinder of claims in this instance.

Also, a newly adopted procedural statute is generally held applicable to pending cases unless its application either would impair some vested right or would violate some constitutional guaranty. 73 Am. Jur. (2d) *Statutes* § 354 at 489-90 (1974); 82 C. J. S. *Statutes* § 416 at 992-93 (1953); *see Merchants Mutual Insurance Co. v. South Carolina Second Injury Fund,* 277 S. C. 604, 291 S. E. (2d) 667 (1982). The retrospective application here of Rule 18(a) would have neither of these effects.

Indeed, Rule 86 expressly provides that the new rules of civil procedure, which took effect on July 1, 1985, and include Rule 18(a), shall govern all further proceedings in pending actions except where their application either "would not be feasible or would work an injustice." We perceive no injustice in applying Rule 18(a) to this case. Moreover, its application is perfectly feasible.

Because we see no reason for not applying Rule 18(a) retrospectively to the instant action, we need not determine whether the circuit court erred in overrul-

ing the defendants' demurrers. Rule 18(a) clearly permits joinder of the claims alleged by the plaintiffs in their amended complaint.

## II.

The defendants next argue the circuit court erred in overruling their demurrers to all causes of action on the ground the amended complaint fails to state facts sufficient to permit a class action because the facts alleged in the amended complaint do not show any unity of interest binding the parties whom the plaintiffs purport to represent and on the ground there is a misjoinder of parties plaintiff because the damages sought by the plaintiffs differ.

### A.

We recognized in *Dockside, supra,* that in South Carolina a representative action brought pursuant to Section 15-5-50 of the Code could be maintained only when the parties represented either were united in interest or had some bond of connection that united them all with the question at issue in the action. 285 S. C. at 572, 330 S. E. (2d) at 541. But *Dockside* was decided before the repeal of Section 15-5-50 by Act No. 100 of 1985 and before the effective date of the new rules. *See* S.C.R.CIV.P. 86.

Although Section 15-5-50 and Rule 23(a)(2) employ similar language in providing for class actions, the requirements for a class action contained in the rule are not identical to those prescribed by the prior statute. As Dean Lightsey and Professor Flanagan observe:

> Class actions ... do not remain as they were under prior practice. The main limitation on the representative suit in this jurisdiction was the restrictive view of the Field Code that required a strong pre-existing legal relationship among the parties to be joined and which, by inference, applied to all prospective class members. Adoption of the flexible joinder rules for claims and parties in Rules 18 and 20, respectively, rejects that narrow view in favor of a pragmatic consideration of the extent of common issues. Consequently, there is no

restriction on joining claims simply because each party seeks an independent recovery.

LIGHTSEY & FLANAGAN, *supra,* at 194.

Rule 23(a)(2) of the new rules permits members of a class to sue as representative parties on behalf of all if, among other things, "there are questions of law or fact common to the class." *Cf.* S. C. Code of Laws § 15-5-50 (1976) (repealed 1985) ("When the question is one of a common or general interest to many persons . . ."). In discussing Rule 23(a)(2), Dean Lightsey and Professor Flanagan write:

> The essence of a class action is common questions of law and fact and Rule 23(a)(2) reflects this. It is important to note that the subsection does not demand that all questions of law and fact be common, only that there be common issues among the class. In fact, a single common issue will suffice if it is important enough. It also follows that the mere existence of individual issues does not defeat class action status.
>
> There is no qualitative or quantitative test in the Rule. Ultimately, commonality is a judgment that the issues are sufficiently similar so that the class action will be a more efficient means of resolving the problem, even though some individual issues may be litigated in any event.

LIGHTSEY & FLANAGAN, *supra,* at 198.

The amended complaint alleges that "[t]he rights of the individual [p]laintiffs and the . . . class involve common questions of law and fact." Among these questions are whether the developers complied with minimum standards for subdivision development, whether Coldstream's streets are defective and substandard, whether the drainage systems in Coldstream are adequate, and whether the developers failed to repair the streets and drainage systems within Coldstream. Obviously, the allegations of the amended complaint satisfy the pleading requirements of Rule 23(a)(2), which we also apply retrospectively, as to a community of interest among the members of the alleged class in the questions of law and fact involved.

## B.

We attach no merit to the defendants' contention concerning misjoinder of parties plaintiff. The permissive joinder rule prescribed by Section 15-5-20 of the Code exists no longer, having also been repealed. *See* 1985 S. C. Acts 100. Since July 1, 1985, Rule 20(a) of the new rules has determined who may be joined in one action as plaintiffs.

The new rule allows several persons to join as plaintiffs in a single action "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." S.C.R.CIV.P. 20(a). In addition, a plaintiff "need not be interested in obtaining ... all the relief demanded" and "[j]udgment may be given for one or more of the plaintiffs according to their respective rights to relief." *Id.*

Quite clearly the claims by the several plaintiffs involve one or more common questions of law and fact of "sufficient importance in proportion to the rest of the action to render it desirable that the whole of the matter should be disposed of at the same time." 59 Am. Jur. (2d) *Parties* § 105 at 509 (1971). The mere fact that the plaintiffs may be entitled to different amounts of damages does not prevent them from banding together and asserting their rights jointly in one action. *See* 7 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1656 at 281-82 (1972).

We therefore apply Rule 20(a) retrospectively and affirm the circuit court's overruling of the defendants' demurrers on the ground of misjoinder of parties plaintiff.

## III.

The defendants further contend the circuit court erred in overruling their demurrers to all causes of action on the ground the amended complaint fails to state facts sufficient to permit a class action "because the alleged class cannot be accurately determined."

The amended complaint alleges, as we mentioned, that the class consists of all residents and owners of improved residential properties in Coldstream. The amended complaint

also alleges that "[t]he members of the class are numerous and constantly changing" and that "the names of some of them are unknown to the [p]laintiffs and cannot with due diligence be ascertained by them." *Cf.* S. C. Code of Laws § 15-5-50 (1976) (repealed 1985) (". . . when the parties are very numerous and it may be impracticable to bring them all before the court . . ."); S.C.R.CIV.P. 23(a)(1) ("the class is so numerous that joinder of all members is impracticable").

In addition to a community of interest among the members of an alleged class in the questions of law and fact involved, there must also be a definable class. 67A C. J. S. *Parties* § 24 at 695-96 (1978); *see* S.C.R.CIV.P. 23(a); LIGHTSEY & FLANAGAN, *supra,* at 195-96; 59 Am. Jur. (2d) *Parties* § 58 at 427-28 (1971). "The class must be cognizable and manageable. . . ." 67A C. J. S. *Parties* § 24 at 696 (1978). Further, the group constituting the class must share enough characteristics that they can be treated as a unit for litigation purposes. LIGHTSEY & FLANAGAN, *supra,* at 195. There is no requirement, however, that at the pleading stage of the case either the exact number of persons comprising the class be specified or the class members be identified. *Id.* at 196; 67A C. J. S. *Parties* § 24 at 696 (1978). The character of the interest controls and not the number of persons. 67A C. J. S. *Parties* § 24 at 696 (1978).

We think the amended complaint sufficiently defines the alleged class, at least for the present. Although the alleged class has a fluid, changing membership, this feature alone does not render the class action device unsuitable. *Curtis v. Voss,* 73 F. R. D. 580, 582 (N. D. Ill. 1976). This is especially true where, as in the case before us, the alleged class has constant defining characteristics. *See Klein v. Nassau County Medical Center,* 347 F. Supp. 496, 499 (E. D. N. Y. 1972), *aff'd, Ryan v. Klein,* 412 U. S. 924, 93 S. Ct. 2747, 37 L. Ed. (2d) 151, *vacated, Commissioner of Social Services v. Klein,* 412 U. S. 925, 93 S. Ct. 2747, 37 L. Ed. (2d) 152, *vacated, Nassau County Medical Center v. Klein,* 412 U. S. 925, 93 S. Ct. 2748, 37 L. Ed. (2d) 152 (1973).

In any case, the problem of determining initial membership in the class affords no basis for dismissal of the action since the circuit court can either require

the plaintiffs to replead, redefine the alleged class itself, or designate subclasses. LIGHTSEY & FLANAGAN, *supra*, at 196.

Applying the new rule retrospectively, we therefore uphold the circuit court's overruling of the defendants' demurrers. S.C.R.CIV.P. 23(a)(1); *see* 1 H. NEWBERG, NEWBERG ON CLASS ACTIONS § 2.03 at 41-42 (rev. ed. 1985); *cf. Evans v. Creech, Mayor*, 187 S. C. 371, 197 S. E. 365 (1938) (judgment in prior class action brought by voters questioning constitutionality of statute given *res judicata* effect in subsequent class action brought by other voters).

## IV.

The county defendants also maintain the circuit court erred in overruling their demurrers to the fifth cause of action on the ground it fails to state facts sufficient to constitute a cause of action because the conduct alleged therein does not constitute a taking within the meaning of Article I, Section 13 of the South Carolina Constitution. We agree.[1]

The plaintiffs allege in their fifth cause of action a taking of their respective properties by the county defendants in violation of Article I, Section 13 of the South Carolina Constitution. They claim the taking resulted from the county defendants' failure to maintain and repair streets and drainage systems in Coldstream and from their failure to establish and enforce minimum standards for subdivision development. Damages incurred by the plaintiffs as a result of these alleged omissions on the part of the county defendants purportedly include the frequent flooding of their properties and damage to their vehicles.

We, however, find *Brown v. School District of Greenville County*, 251 S. C. 220, 161 S. E. (2d) 815 (1968), controlling.

---

[1] A demurrer may no longer be used to test the sufficiency of a cause of action alleged in a pleading, the demurrer having been abolished by the repeal of Section 15-13-320 of the South Carolina Code of Laws (1976) and the adoption of the new rules of civil procedure. *See* 1985 S. C. Acts 100; S.C.R.CIV.P. 12 and 86; H. LIGHTSEY & FLANAGAN, SOUTH CAROLINA CIVIL PROCEDURE at 271 ((2d) ed. 1985). At the option of the pleader, the defense of failure to state facts sufficient to constitute a cause of action may now be raised by a motion to dismiss. S.C.R.CIV.P. 12(b)(6); *see* LIGHTSEY & FLANAGAN, *supra*, at 275-76.

In *Brown*, the plaintiffs sued the School District of Green-ville County and the City of Greenville for allegedly causing surface waters to be wrongfully discharged onto their land. The complaint alleged

> that the city "did fail after legally assuming the main-tenance and care of Stone Lake Drive to provide a proper drainage system to carry the natural surface waters flowing into and across the said street, and *** did *** fail to substantially correct, rectify and prevent the conditions which were causing damage to plaintiffs' property, after actual notice of such damage ***."

251 S. C. at 222-23, 161 S. E. (2d) at 816. The circuit court sustained the City's demurrer to the complaint. In affirming the circuit court, the Supreme Court, speaking through Jus-tice (later Chief Justice) Littlejohn, held:

> We are also of the opinion that no cause of action against the city is stated under Article I, Section [13] of the constitution. The normal way for a governmental agency to take private property for public use is by way of condemnation. When and if a public agency takes private property for public use without condemnation and without paying compensation a common law action may be instituted. *See Chick Springs Water Company v. State Highway Department*, 159 S. C. 481, 157 S. E. 842 [(1931)]. In such case there would normally have to be some positive, aggressive, overt act on the part of the agency which brings about the taking. In other words, it is difficult, if not impossible, to take anything from someone negatively or by failing to act. In this com-plaint we are unable to find any such allegations which would serve as a basis for imposing liability against the city.

251 S. C. at 225, 161 S. E. (2d) at 817.

When we construe, as we must [*DeBerry v. McCain*, 275 S. C. 569, 274 S. E. (2d) 293 (1981)], the allegations of the fifth cause of action in favor of the plaintiffs, we discern no inference that the plaintiffs' properties were "taken" by the county defendants. Only failures to act are alleged. As noted in *Brown*, failures to act are not enough to constitute a

taking under Article I, Section 13. To be actionable, a taking ordinarily must grow out of "a positive or aggressive step." *Gasque v. Town of Conway,* 194 S. C. 15, 23, 8 S. E. (2d) 871, 874 (1940); *cf.* S. C. Code of Laws § 57-17-810 (1976) (a statute permitting a tort action for damage resulting from either a defect in or the negligent repair of a county road).

The circuit court erred, therefore, in not sustaining the county defendants' demurrers to the fifth cause of action on the ground it fails to state facts sufficient to constitute a cause of action for a taking in violation of Article I, Section 13.

Because we hold the fifth cause of action fails for insufficiency as to the county defendants, we need not address their arguments that the doctrines of sovereign immunity and legislative immunity bar the plaintiffs from maintaining that cause of action against them.

The plaintiffs also allege in their fifth cause of action a taking of their respective properties by the developers in violation of Article I, Section 13. The circuit court overruled the developers' demurrers to the fifth cause of action. Although the developers argued in their brief the issue of whether the fifth cause of action alleges facts sufficient to constitute a cause of action against them, they did not preserve the issue by proper exception. Without the exception, we lack authority to address the issue. *See Mackey v. Kerr-McGee Chemical Co.,* 280 S. C. 265, 312 S. E. (2d) 565 (Ct. App. 1984).

## V.

The developers maintain the circuit court erred in overruling their demurrers to the first, third, and sixth causes of action on the ground they each fail to state facts sufficient to constitute a cause of action. The exceptions relating to these causes of action assert they fail to state a cause of action because "there is no duty of care imposed upon the seller of an unimproved subdivision lot," "there is no implied warranty of fitness in connection with the sale of an unimproved subdivision lot," and dedicated property carries with it no warranties.

A.

In their brief, the developers refer to the first cause of action and its allegations of damages resulting from the negligent design and construction of roads and drainage facilities in Coldstream. They acknowledge an aggrieved party may pursue in tort one who negligently constructs certain improvements to real estate [*see Brown v. Sandwood Development Corp.*, 277 S. C. 581, 291 S. E. (2d) 375 (1982)], but they argue the amended complaint does not allege the developers "actually constructed the roads and drainage [systems] in the subdivision."

The question of whether the first cause of action fails to state a cause of action because it does not allege the developers designed and constructed these improvements is not fairly embraced by any of their exceptions and it appears for the first time in their brief. The question, therefore, does not merit our consideration. *Knight v. Lee*, 262 S. C. 17, 202 S. E. (2d) 19 (1974); *Hall v. Equitable Life Assurance Society of U. S.*, 177 S. C. 148, 181 S. E. 33 (1935).

In any case, the first cause of action, liberally construed, alleges the developers developed Coldstream as a subdivision. Their development activities allegedly "encompassed the planning and construction of streets [and] drainage systems" and the sale of subdivision lots. The first cause of action further alleges these defendants "negligently designed, planned, developed, and constructed" Coldstream and the plaintiffs sustained damages to their properties and vehicles as a proximate result of Coldstream's "substandard" roads and "inadequate" drainage systems.

The question of whether the instant action may be maintained against the developers as developers-subdividers for negligent failure to provide adequate roads and drainage systems within the subdivision remains, so far as we can tell, one of novel impression in this state. *Vaden v. College Heights Subdivision*, 261 S. C. 509, 201 S. E. (2d) 113 (1973); *cf. Brown v. Sandwood Development Corp.*, 277 S. C. 581, 291 S. E. (2d) 375 (1982) (wherein Supreme Court reversed and remanded for a new trial an action based on negligent design and construction by contractor and subdivision developer of a concrete spillway). We therefore decline to decide

the issue on demurrer. *Brown v. Sandwood Development Corp.*, 273 S. C. 31, 253 S. E. (2d) 514 (1979).

### B.

The exception that raises the issue of whether a seller of a subdivision lot owes any duty of care to a purchaser of the lot is nowhere argued in the defendants' brief. A failure to argue an exception constitutes an abandonment of it. *Cudd v. John Hancock Mutual Life Insurance Co.*, 279 S. C. 623, 310 S. E. (2d) 830 (Ct. App. 1983). We therefore do not address this exception.

The gist of the first cause of action, we might add, is that the developers negligently designed and constructed certain improvements and not that they as sellers of unimproved land breached some duty of care allegedly owed the plaintiffs as purchasers thereof.

We affirm, then, the circuit court's overruling of the defendants' demurrers to the first cause of action.

### C.

The focus of the developers' argument is upon the third cause of action and the exception that presents the question of whether an implied warranty of fitness accompanies the sale of unimproved realty.

The third cause of action alleges the developers breached an implied warranty that the property that the plaintiffs purchased in Coldstream and Coldstream's streets and drainage systems were fit for their particular purposes.

In South Carolina, an implied warranty of fitness does not extend to a purchaser of unimproved land. *Jackson v. River Pines, Inc.*, 276 S. C. 29, 274 S. E. (2d) 912 (1981). Such a warranty in favor of a purchaser can arise, however, from the sale of an improvement, such as a dam and spillway or a dwelling. *Brown v. Sandwood Development Corp.*, 277 S. C. 581, 291 S. E. (2d) 375 (1982); *Lane v. Trenholm Building Co.*, 267 S. C. 497, 229 S. E. (2d) 728 (1976); *Rutledge v. Dodenhoff*, 254 S. C. 407, 175 S. E. (2d) 792 (1970); *cf. Arvai v. Shaw*, 286 S. C. 357, 334 S. E. (2d) 287 (Ct. App. 1985) (no implied warranty exists where house is not constructed for speculative sale but is built pursuant to owner plans and specifications). A subsequent purchaser of

improved realty can also enforce an implied warranty against the vendor, provided he brings the action within a reasonable period following construction. *See Terlinde v. Neely*, 275 S. C. 395, 271 S. E. (2d) 768 (1980). But before an implied warranty of fitness can arise, a sale must first occur. *See* 67 Am. Jur. (2d) *Sales* § 460 at 628 (1973); *cf.* S. C. Code of Laws § 36-2-314 (1976) ("a warranty that the goods shall be merchantable is implied in a contract for their sale ..."); *id.* § 36-2-315 ("Where the seller at time of contracting ... there is ... an implied warranty that the goods shall be fit ..."); *Brown v. Sandwood Development Corp., supra,* 277 S. C. at 585, 291 S. E. (2d) at 377 (an implied warranty of fitness "springs from the sale itself"); R. NORDSTROM, LAW OF SALES § 74 at 229 (1970) ("the implied warranty arises from the nature of the sale ...").

Here, the amended complaint neither identifies the sellers who sold the plaintiffs their properties nor describes the properties they bought. In fact, it contains no allegation of any sale by the developers of improved realty to anyone at anytime and at most infers the developers only sold "lots," a term never employed to describe "improvements." *Canty v. Staley*, 162 Cal. 379, 123 P. 252 (1912). Absent an allegation that the developers sold either houses, streets, drainage systems or other improvements, which the plaintiffs at some point purchased, the former cannot be charged with having extended an implied warranty of fitness to the plaintiffs. *See Holder v. Haskett*, 283 S. C. 247 321 S. E. (2d) 192 (Ct. App. 1984).

The circuit court committed error, therefore, in overruling the developers' demurrers to the third cause of action.

D.

We see no need to address the developers' argument concerning the issue of whether a dedicator implies a warranty of fitness in dedicating property to public use. *See* 26 C. J. S. *Dedication* § 54 at 538 (1956). The question does not appear to have been presented to and passed upon by the circuit court; therefore, it is not properly before the Court of Appeals and will not be considered. *Falco Corp. v. Anderson Norgetown, Inc.*, 263 S. C. 120, 208 S. E. (2d) 40 (1974).

### E.

We turn now to the sixth cause of action. It seeks a mandatory injunction requiring the developers to remedy the defects in Coldstream's streets and drainage systems. The only argument the developers direct to this cause of action is that it fails to state facts sufficient to constitute a cause of action because the prior causes of action realleged therein and on which the sixth cause of action depends do not themselves contain facts sufficient to constitute a cause of action. This argument lacks merit.

Because we heretofore have upheld the first cause of action, which is one of the causes of action embraced by the sixth cause of action, we must likewise uphold the latter cause of action, which merely seeks a remedy different from that sought by the first cause of action.

We therefore affirm the circuit court's overruling of the developers' demurrers to the sixth cause of action.

### VI.

The effect of our decision today, then, so far as the county defendants and the developers are concerned, is simply to permit a joinder of the claims and remedies alleged in the amended complaint, to allow a joinder of the plaintiffs in the bringing of the action, to uphold the class-action allegations of the amended complaint, and to allow the plaintiffs to proceed solely against the developers on their first, fifth, and sixth causes of action.

Affirmed in part and reversed in part.

SHAW and HOWELL, JJ., concur.