577 S.E.2d 190

Ronald F. GARDNER, Daryl S. Gardner, Nancy D. Helton a/k/a Nancy Foster, Robert S. Helton, James R. Bonner, David A. Hart, W. Denise Reeder, George R. Donnels, Patricia C. Donnels and Shunda Cureton, Plaintiffs/Respondents,

v.

SOUTH CAROLINA DEPARTMENT OF REVENUE, Woodruff–Roebuck Water District, Spartanburg Regional Medical Center, B.J. Workman Memorial Hospital, Gaffney Board of Public Works, Laurens County Hospital, Greenville Hospital System, Self Memorial Hospital, the Municipal Association of South Carolina, the South Carolina Association of Counties and all related affiliates and subsidiaries of such entities and all other entities in the State of South Carolina that have purported to avail themselves of any provision of the South Carolina Setoff Debt Collection Act, Defendants/Appellants,

Abbeville County Memorial Hospital, Allendale County Hospital, Bamberg County Hospital, Barnwell County Hospital, Beaufort Memorial Hospital, Charleston Memorial Hospital, Chester County Hospital, Clarendon Memorial Hospital, Edgefield County Hospital, Fairfield Memorial Hospital, Hampton Regional Medical Center, Kershaw County Medical Center, Lexington County Health Services District, Inc., d/b/a Lexington Medical Center, Loris Community Hospital, Marion County Medical Center, Newberry County Memorial Hospital, Palmetto Health Alliance as assignee of Richland Memorial Hospital, and the Regional Medical Center of Orangeburg and Calhoun Counties, Intervenors/Appellants.

No. 25587.

Supreme Court of South Carolina.

Heard Nov. 19, 2002.
Decided Jan. 27, 2003.
Rehearing Denied March 7, 2003.

4

C. Mitchell Brown and B. Rush Smith, III, of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia, for Named and Class Defendants/Appellants.

General Counsel & Deputy Director Harry T. Cooper, Jr., Chief Counsel for Revenue Litigation Ronald W. Urban, and Counsel for Revenue Litigation Joe S. Dusenbury, Jr., all of Columbia, for Named Defendant/Appellant South Carolina Department of Revenue.

Robert E. Stepp and Elizabeth Van Doren Gray, of Sowell Gray Stepp & Laffitte, LLC, of Columbia, and H. Spencer King of Leatherwood Walker Todd & Mann, of Spartanburg, for Named Defendant/Appellant Municipal Association of South Carolina.

Thornwell F. Sowell of Sowell Gray Stepp & Laffitte, LLC, of Columbia, for Named Defendant/Appellant South Carolina Association of Counties.

H. Sam Mabry, III, J. Derrick Quattlebaum, and Matthew P. Utecht, of Greenville, for Named Defendant/Appellant Greenville Hospital System.

Edwin E. Evans and Henry J. White, of Columbia, for Class Defendant/ Appellant State Budget and Control Board, South Carolina Retirement Systems.

Attorney General Charles M. Condon, Deputy Attorney General Treva G. Ashworth, Assistant Deputy Attorney General J. Emory Smith, Jr., of Columbia, for Defendant/Appellant State Class Defendants; James R. Allen of Barnes, Alford, Stork and Johnson, LLP, of Columbia, for Defendant/Appellant State Education Assistance Authority.

William C. Hubbard and Dwight Drake of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia, for Class Defendant/Appellant South Carolina Public Service Authority; C. Mitchell Brown and B. Rush Smith, III, of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia, for Intervenors/Appellants; Wilburn Brewer, Jr., and Thomas C.R. Legare of Nexsen Pruet Jacobs & Pollard, LLP, of Columbia, for Class Defendants/Appellants 42 Putative Class Members.

James W. Sheedy and W. Chaplin Spencer, Jr., of Spencer & Spencer, P.A., of Rock Hill, for Class Defendants/Appellants York County Natural Gas Authority of Rock Hill, South Carolina Lancaster County Natural Gas Authority, Rock Hill Housing Authority, and Fort Mill Housing Authority.

Charles E. Carpenter, Jr., and Sam G. Stathos, of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia, for Class Defendants/Appellants Morris College, Voorhees College, and Newberry College.

Steve A. Matthews, Manton M. Grier, and Phillip Florence, Jr., of Haynsworth Sinkler Boyd, P.A., of Columbia, for Class Defendants/Appellants Local Entities.

David S. Black, of Howell, Gibson & Hughes, of Beaufort, for Appellant Beaufort County EMS.

David L. Morrison, of Davidson, Morrison & Lindeman, of Columbia, for Defendants/Appellants City of Irmo, City of Williamston, Sumter County Clerk of Court, Abbeville County, Chester County, Greenwood County, and McCormick County.

Michael N. Duncan, of Whiteside–Smith Firm, of Spartanburg, Appellant City of Chesne, City of Cowpens and City of Wellford.

Emma Ruth Brittain, of Thompson Law Firm, of Myrtle Beach, for Appellant Claflin University.

James R. Thompson, of Saint–Amand, Thompson & Brown, of Gaffney, for Appellant Gaffney Board of Public Works.

J. Michael Turner, of Turner, Able & Burney, of Laurens, for Appellant Laurens County Hospital.

Steven M. Pruitt, of McDonald, Patrick, Tinsley, Baggett & Poston, of Greenwood, for Defendant/Appellant Self Memorial Hospital.

Edwin C. Haskell, III, Smith & Haskell, of Spartanburg, for Appellants Spartanburg Regional Medical Center and B.J. Workman Memorial Hospital.

D. Garrison Hill, of Hill & Hill, of Greenville, for Unnamed Class Defendants/Appellants Greer Commission of Public Woks and Seneca Light and Water Plant.

Nancy T. Hobbs of McDonald, Patrick, Tinsley, Baggett & Poston, L.L.P., of Greenwood, for Class Defendants/Appellants Greenwood Commissioners of Public Works and Erskine College.

Kenneth C. Anthony, Jr., of the Anthony Law Firm, and Patrick E. Knie, of Patrick E. Knie, P.A, both of Spartanburg for Plaintiffs/Respondents.

Justice BURNETT.

This appeal concerns the 1995 Setoff Debt Collection Act (1995 Act)[1] and 1999 amendments[2] thereto. The 1995 Act permits a "claimant agency" to seize the South Carolina income tax refund of a taxpayer who has a delinquent debt with the claimant agency. We affirm in part, reverse in part, and remand.

## FACTS

Plaintiffs/Respondents (Plaintiffs) brought this declaratory judgment action against Defendants/Appellants (Defendants) asserting Defendants, as claimant agencies, improperly seized their income tax refunds. Plaintiffs sought injunctive relief, the return of their seized tax refunds, and damages. In

---

1. Act No. 76, 1995 S.C. Acts 521.

2. Act No. 1144, 1999 S.C. Acts 1177.

addition, Plaintiffs sought to be certified as class representatives of all taxpayers who incurred a reduction in their income tax refund in the amount of $100 or more and requested the Defendants be certified as class representatives of all claimant agencies which had availed themselves of the 1995 Act by recovering debts of $100 or more.

The trial judge granted Plaintiffs' motion for summary judgment. Through a series of orders, the trial judge 1) held certain notices did not substantially comply with the 1995 Act 2) refused to presently consider the Named Defendants' counterclaims against the Named Plaintiffs, 3) ordered the return of seized income tax refunds for 1996, 1997, and 1998, plus related administrative fees and interest, 4) ordered a return of administrative fees, plus interest, collected by Defendants/Appellants Municipal Association of South Carolina (MASC) and South Carolina Association of Counties (SCAC) [3] in 1999, and 5) enjoined the South Carolina Department of Revenue (DOR) from collecting any claims submitted by the Associations for tax year 1999. In addition, the trial judge certified a bilateral class action. Thereafter, the trial judge denied Intervenors/Appellants (Intervenors) petition to intervene as parties in the matter. Defendants appeal.[4]

## I. *ISSUES RELATING TO THE 1995 ACT*

In 1988, the General Assembly enacted the "Setoff Debt Collection Act." Act No. 474, 1988 S.C. Acts 4020. This Act permits "claimant agencies" to seize the South Carolina income tax refunds of taxpayers who owe delinquent debts to the agencies.[5] Defendants are currently defined as "claimant

---

3. At times, the MASC and SCAC are referred to jointly as "the Associations."

4. At times, Named Defendants, Class Defendants, and Intervenors are referred to collectively as "Defendants." At other times, we refer to Defendants individually.

5. In the 1995 Act, "claimant agency" is defined as "a state agency, board, committee, commission, public institution of higher learning, political subdivision, and the Internal Revenue Service. It also includes a private institution of higher learning for the purpose of collecting debts related to default on authorized educational loans made pursuant to Chapters 111, 113, or 115 of Title 59. 'Political subdivision' includes the Municipal Association of South Carolina and the

agencies." In relevant part, § 12–56–60(A) of the 1995 Act provides:

> *A request for setoff [by the claimant agency to the DOR] may be made only after the claimant agency has notified the debtor of its intention to cause the debtor's refund to be set off.* This notice must be given in person, left at the dwelling or usual place of business of the debtor, or sent by certified or registered mail to the debtor's last known address no less than thirty days before the claimant agency's request to the [DOR]. *The notice shall include a statement which sets forth administrative appeal procedures available to the debtor* and alternatives available to the debtor which could prevent setoff. The claimant agency promptly shall notify the debtor when the liability out of which the set off arises is satisfied.

(Underline added).

Section 12–56–60(B) provides:

> Upon receiving the certification of the claimant agency of the amount of the delinquent debt, the [DOR] shall determine if the debtor is due a refund. If the debtor is due a refund of more than twenty-five dollars, the DOR shall set off the delinquent debt against the amount of the refund in excess of twenty-five dollars and transfer the amount set off to the claimant agency. The department may retain an amount not to exceed twenty-five dollars of each refund set off to defray its administrative expenses ... The [DOR] shall consider any certified delinquent debt and debtor list provided by a claimant agency as correct. Reviews of refund setoffs are with the claimant agency. If, after appropriate review the claimant agency determines that the setoff amount is excessive, it shall refund the appropriate amount to the taxpayer. If, after appropriate review, the claimant agency determines that it is entitled to no part of the amount set off, it shall refund the entire amount plus the administrative fee retained by the [DOR]. That portion of the refund reflecting the administrative fee must be paid from claimant agency funds. If a refund has been retained

---

South Carolina Association of Counties when these organizations submit claims on behalf of their members or other political subdivisions."
S.C.Code Ann. § 12–56–20(1) (Supp.1996).

in error, the claimant agency shall pay interest to the taxpayer calculated as provided in Section 12–54–20 from the date provided by law after which interest is paid on refunds until the appeal is final . . .

The trial judge held those claimant agencies whose 1996, 1997, or 1998 notices were included on lists designated as "Category 1" or "Category 2" failed to substantially comply with the statutory notice requirement of § 12–56–60(A). The trial judge described Category 1 notices as those "without mention of an 'administrative appeal' but at best a name and phone number to call in case that taxpayer had a question" and Category 2 notices as "those notices which make some mention of an appeal but do not 'include a statement which sets forth administrative appeals procedures available to the debtor'."

### A. *Notice*

Defendants argue the trial judge erred by holding the Category 1 and Category 2 notices did not substantially comply with § 12–56–60(A). They contend the information provided by the Category 1 and Category 2 notices adequately set out the "review procedure" as contemplated by the statute. Accordingly, Defendants contend the notices complied with due process and, therefore, substantially complied with § 12–56–60(A). We disagree.

Initially, we note the issue is not whether the Category 1 or 2 notices complied with the requirements of constitutional due process.[6] Instead, the issue is whether the notices complied with the requirements of § 12–56–60(A).[7] The General Assembly legislatively established the due process required by the 1995 Act.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Mid–State Auto Auction of Lexington v. Altman,* 324 S.C. 65, 476 S.E.2d

---

6. The trial judge expressly declined to rule whether the Category 1 or Category 2 notices complied with due process.

7. *Anderson v. White,* 888 F.2d 985 (3rd Cir.1989), cited by Defendants, is inapposite. In *Anderson,* the taxpayers argued the pre-offset notices did not satisfy due process, not whether the notices satisfied the applicable United States Code provision.

690 (1996). Where the terms of the relevant statute are clear, there is no room for construction. *Parsons v. Georgetown Steel*, 318 S.C. 63, 456 S.E.2d 366 (1995).

The plain language of § 12–56–60(A) requires that the notice of a tax refund setoff "shall include a statement which sets forth administrative review procedures available to the debtor ...". The Category 1 notices which provided a telephone number and, perhaps, the name of a contact person, clearly did not meet the mandatory provision of the statute. While the Category 2 notices informed the taxpayer he/she could "request a review" by calling or writing the claimant agency's Setoff Debt Collection department within a specified length of time, the notices did not "set forth administrative appeal procedures available" as specified by § 12–56–60(A). Advising the taxpayer he/she may "request a review" within a declared deadline is not the equivalent of "set[ting] forth administrative appeal procedures."

Defendants rely on *South Carolina Second Injury Fund v. American Yard Products*, 330 S.C. 20, 496 S.E.2d 862 (1998), and *Davis v. NationsCredit Fin. Servs. Corp.*, 326 S.C. 83, 484 S.E.2d 471 (1997), to suggest that, while the Category 1 and Category 2 notices may not have specified the administrative appeal procedures available as provided by § 12–56–60(A), the notices were nonetheless adequate. The cited cases hold that compliance with the technical requirements of a notice statute may be excused where the parties received the substance of the statutorily required notice. Here, however, the Category 1 and 2 notices did not provide Plaintiffs with the substance—the claimant agency's administrative appeal procedure—required by the statute. Accordingly, *American Yard Products* and *Davis* are inapplicable.

Finally, some Defendants claim that subsequent amendments to the 1995 Act demonstrate the legislative intent of the 1995 Act was not to require an explanation of all administrative appeal procedures in the notice. We disagree.

In 1999, the General Assembly substantially amended the Setoff Debt Collection Act. Act No. 114, 1999 S.C. Acts 1177. That portion of the 1995 Act requiring "[t]he notice shall include a statement which sets forth administrative appeal procedures available to the debtor" was deleted in the 1999

Act. Section 12–56–62 was added to the 1999 Act. This provision states:

> ... The notice must include a statement of appeal procedures available to the debtor substantially as follows:
>
> > According to our records, you owe the (*claimant agency*) a debt in the amount of (*amount of the debt*) for (*type of debt*). You are hereby notified of the (*claimant agency's*) intention to submit this debt to the South Carolina Department of Revenue to be set off against your individual income tax refund. Pursuant to the Setoff Debt Collection Act, this amount, plus all costs, will be deducted from your South Carolina individual income tax refund unless you file a written protest within thirty days of the date of this notice ... The protest must contain the following information:
>
> > (1) your name;
> >
> > (2) your address;
> >
> > (3) your social security number;
> >
> > (4) the type of debt in dispute; and
> >
> > (5) a detailed statement of all the reasons you disagree or dispute the debt.
>
> > The original written protest must be mailed to the (*claimant agency*) at the following address:
> >
> > (*address of the entity requesting the setoff*).

In addition, the 1999 Act established a uniform procedure governing the protest of setoff claims. Under the 1999 Act, a claimant agency is required to appoint a hearing officer to consider the protest of a taxpayer before submitting the claim to the DOR. Further, the claimant agency is required to notify the DOR that it has received a protest and it must hold an informal hearing before the DOR may proceed with the setoff. If the hearing officer rules in favor of the claimant agency, the DOR may proceed with the setoff, even though the taxpayer may appeal the adverse decision to the Administrative Law Judge Division or, in some circumstances, file a summons and complaint with the circuit court. S.C.Code Ann. § 12–56–63; § 12–56–65; § 12–56–67 (2000).

Under the 1995 Act, a claimant agency could proceed with its claim with the DOR after giving the taxpayer thirty days

notice of its intent to seek setoff, regardless of whether the taxpayer sought review. § 12–56–60(A) and (B) (Supp.1996). Review was with the claimant agency in accordance with its own procedures. § 12–56–60(B).

While Defendants correctly assert that subsequent amendments may be interpreted as clarifying the legislative intent behind existing law, *Hyde v. South Carolina Dep't of Mental Health*, 314 S.C. 207, 442 S.E.2d 582 (1994), the 1999 Act does not clarify the notice provisions of the earlier legislation as the two versions of the Setoff Debt Collection Act are significantly different. Because each claimant agency had its own unique review procedure under the 1995 Act, that Act reasonably required the claimant agencies to include "a statement set[ting] forth administrative appeal procedures" in the notice. Because the 1999 Act established a standard review procedure for all claimant agencies, it eliminated the need for providing the administrative appeal procedures of the particular claimant agency. Taxpayers can obtain the uniform review procedure by referring to the statute.

We conclude the trial judge properly held the Category 1 and Category 2 notices did not substantially comply with the notice requirements of the 1995 Act.

### B. *Prejudice*

■ Defendants argue that, even if the pre-setoff notices were statutorily inadequate, each Plaintiff is required to establish prejudice in that he/she would have taken action upon receipt of a sufficient notice and had a valid defense to the underlying debt. We agree.

■ As a general rule, a party must establish prejudice as the result of another's failure to follow mandatory statutory procedure. *See Rose v. Beasley*, 327 S.C. 197, 489 S.E.2d 625 (1997) (where statutory pre-removal hearing was not provided, party nonetheless failed to establish prejudice where received post-removal hearing); *see also Porter v. South Carolina Public Serv. Comm'n*, 338 S.C. 164, 525 S.E.2d 866 (2000) (Court reversed agency decision where it found substantial prejudice from lack of notice). Where a party receives inadequate notice, he must demonstrate prejudice resulting from the insufficient notice. *Ballenger v. South Carolina Dep't of*

*Health and Envtl. Control,* 331 S.C. 247, 500 S.E.2d 183 (Ct.App.1998) (even though applicant's notice was misleading, opposing party was not prejudiced); *Long v. Bd. of Governors of the Federal Reserve Sys.,* 117 F.3d 1145 (10th Cir.1997) (although party did not receive adequate notice of potential penalty, he failed to establish he could have obtained better outcome, therefore, failed to establish prejudice). Even where a party receives no notice, he must establish that, had he received notice, he would have taken pertinent action and could have reduced his liability. *Boley v. Brown,* 10 F.3d 218 (4th Cir.1993).

In granting summary judgment in favor of the Named and Class Plaintiffs, the trial judge did not specifically address the issue of prejudice, but apparently determined violation of the notice provision of the 1995 Act constituted prejudice in and of itself. This was erroneous. It may well be that, had some taxpayers received a notice which complied with the 1995 Act, they would have opted not to protest their income tax setoff for various reasons, one being they owed the delinquent debt to the claimant agency. Further, we find it likely that, if they had filed protests, some taxpayers would not have prevailed: they would not have established their debts were not due and owing.

## C. *Collection Costs*

Defendants argue the trial judge erred by holding claimant agencies were not entitled to add collection costs to Plaintiffs' underlying debts.

Since its inception in 1988, the Setoff Debt Collection Act has provided that "claimant agencies *may submit for collection* under the procedure established by this article *all delinquent debts* which they are owed." Act No. 474, 1988 S.C. Acts 4022 (underline added); Act No. 76, 1995 S.C. Acts 521 (substituted "chapter" for "article").

As originally enacted, the Setoff Debt Collection Act did not include the Associations within the definition of "claimant agency." S.C.Code Ann. § 12–54–420(1) (Supp.1989). In 1992, the General Assembly amended the definition of "claimant agency." Under the amended provision, the MASC and SCAC were defined as "political subdivisions" (and, therefore,

claimant agencies) "when these organizations submit claims on behalf of their members." S.C.Code Ann. § 12–54–420(1) (Supp.1993). In 1994, the legislature again amended the Setoff Debt Collection Act, adding the MASC and SCAC are "political subdivisions" (and, therefore, claimant agencies) "when these organizations submit claims on behalf of their members and other political subdivisions." Act No. 516, 1994 S.C. Acts 5916.

Originally, the Setoff Debt Collection Act defined "delinquent debt" as:

> [A]ny liquidated sum due and owing any claimant agency, including court costs, fines, penalties, and interest which have accrued through contract, subrogation, tort, operation of law, or any other legal theory regardless of whether there is an outstanding judgment for that sum which is legally collectible and for which a collection effort had been or is being made.

Act No. 474, 1988 S.C. Acts 4022.

In 1994, the General Assembly amended the definition of "delinquent debt" as follows:

> [A]ny liquidated sum due and owing any claimant agency, including *collection costs,* court costs, fines, penalties, and interest which have accrued through contract, subrogation, tort, operation of law, or any other legal theory regardless of whether there is an outstanding judgment for that sum which is legally collectible and for which a collection effort has been or is being made. .

Act No. 516, 1994 S.C. Acts 5916 (underline added).[8]

Since 1992 the MASC and SCAC have participated in the setoff collection process by consolidating and forwarding delinquent debts on behalf of claimant agencies to the DOR. In exchange for their collection efforts, the MASC and SCAC add $25 and $15, respectively, as an administrative fee to each "successful setoff" submitted on behalf of a claimant agency to the DOR. Some claimant agencies which avail themselves of the Associations' procedures also add a collection fee to the

---

8. "Delinquent debt" was again revised in 1996. In relevant part, the amendment deleted the requirement that the delinquent debt be liquidated. Act No. 395, 1996 S.C. Acts 2415.

underlying debt. Not all claimant agencies pursue collection through the MASC or SCAC. Some agencies which pursue tax setoffs on their own add a collection fee.

The trial judge ruled the 1995 Act did not permit automatic recovery of collection costs or administrative fees assessed by the Associations or claimant agencies. Instead, he held the recovery of costs or fees was permissible only if they "accrued through contract, subrogation, tort, operation of law, or any other legal theory . . .".

Defendants argue the trial judge misconstrued the provisions permitting recovery of collection costs. Specifically, they claim the statute provides for the recovery of "any liquidated sum due and owing a claimant agency" and "collection costs" is not limited by the phrase "accrued through contract, subrogation, tort, operation of law, or any other legal theory." We disagree.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Mid–State Auto Auction of Lexington v. Altman, supra.* Where the terms of the relevant statute are clear, there is no room for construction. *Parsons v. Georgetown Steel, supra.*

The language of the 1995 Act indicates the legislature's clear intent to define "delinquent debts" expansively. As originally provided by the Setoff Debt Collection Act, "delinquent debt" was defined as *any* liquidated sum due and owing *any* claimant agency, including . . . *which have accrued through* contract, subrogation, tort, operation of law, or *any other legal theory* . . .". Act No. 474, 1998 S.C. Acts 4022 (underline added). The only "limitation" is that the cost be legally recognizable (i.e., that the cost accrues through a legal theory). The legislature later added "collection costs" to its definition of recoverable debt and retained the "legally recognizable" requirement. Act No. 516, 1994 S.C. Acts 5916. Accordingly, we conclude the trial judge did not err by holding, in order to be recoverable through the Setoff Debt Collection Act, collection costs must accrue via some legal theory.

### D. *Associations' Liability*

■ Associations argue the trial judge erred by holding them liable to the Named and Class Plaintiffs for return of the seized income tax refunds and interest. We agree.

The 1995 Act required the claimant agency seeking the income tax setoff to provide the statutorily required notice to the delinquent taxpayer. § 12–56–60(A). In addition, it provided any review of refund setoffs was through the claimant agency. § 12–56–60(B). If the claimant agency determined a setoff was excessive, the claimant agency was to provide the refund and interest. *Id.*

■ These statutory provisions indicate the legislature clearly intended the refund of any excessive income tax setoff be made by the claimant agency who collected the setoff. Similarly, any claimant agency's failure to follow the statutory procedure should result in liability by the claimant agency, not the Associations.[9]

## II. *ISSUES RELATING TO THE 1999 ACT*

The Associations, DOR, and other Defendants argue the trial judge erred by holding the collection fees assessed by the Associations pursuant to 1999 amendments to the Setoff Debt Collection Act are unconstitutional. We agree.

As noted above, the General Assembly substantially amended the Setoff Debt Collection Act in 1999. In part, the legislature added § 12–56–63(B) as follows:

---

9. We question whether the 1995 Act creates a private right of action which can be enforced by taxpayers. The statute does not expressly provide a cause of action for taxpayers. Moreover, it appears the 1995 Act does not create an implied right of action. *See Camp v. Springs Mortgage Corp.*, 310 S.C. 514, 426 S.E.2d 304 (1993) (test to determine whether right of private action in favor of certain party is created by implication under civil statute is whether legislation was enacted for special benefit of the party). The Setoff Debt Collection Act was created for the benefit of claimant agencies who are owed delinquent debts by taxpayers. While the Act provides for notice prior to the setoff of income tax refunds, violation of the notice provision does not evince a legislative intent to create a private right of action. The "remedy" provided by § 12–56–60(B) only suggests refund by the claimant agency "if the setoff amount is excessive," not for failure to follow the setoff procedures. Nevertheless, we decline to rule on this issue.

An association defined as a political subdivision in Section 12–56–20(1) may contract with another political subdivision for the processing of debts to be submitted to the [DOR]. These services may be funded through an administrative fee. . . .

The trial judge held "[t]he portion of the 1999 Act which purports to allow the Associations to seize from taxpayers' refunds a collection fee unspecified and unlimited in amount . . . is unconstitutional, as a denial of due process and equal protection." [10] The trial judge ordered a return of fees, plus interest, collected for tax year 1999 to Plaintiff class members.[11]

All statutes are presumed constitutional and will, if possible, be construed so as to render them valid. *Davis v. County of Greenville*, 322 S.C. 73, 470 S.E.2d 94 (1996). The substantive due process guarantee ensures legislation which deprives person of a life, liberty, or property right has, at a minimum, a rational basis, and is not arbitrary or overly vague. *Treatment and Care of Luckabaugh*, 351 S.C. 122, 568 S.E.2d 338 (2000). The burden of showing that a statute is unreasonable falls on the party who attacks it on due process grounds. *State v. Hornsby*, 326 S.C. 121, 484 S.E.2d 869 (1997).

Named Plaintiffs have not established the 1999 Act's failure to provide a cap on the administrative fees assessed by the Associations violates substantive due process. Named Plaintiffs did not establish the General Assembly had no rational basis for permitting the Associations to assess taxpayers for processing setoffs for claimant agencies. Instead, we find the General Assembly determined the Associations' ability to consolidate and process setoff claims was of administrative benefit both to the claimant agencies and to the DOR. Furthermore,

---

10. At the hearing, the trial judge allowed Plaintiffs to amend their complaint to add a cause of action stating the fee provision of the 1999 Act was unconstitutional.

11. Since the plaintiff class is "composed of all persons who had their 1996, 1997, or 1998 South Carolina income tax refund seized" by certain enumerated agencies, we assume the trial judge meant only the Named Defendants would reimburse those Named Plaintiffs who had their 1999 taxes seized.

Plaintiffs failed to establish the fees actually charged ($15 or $25) were arbitrary or unreasonable. The failure of the statute to set a cap for a particular charge does not, standing alone, violate substantive due process.

Further, Named Plaintiffs failed to establish that that portion of the 1999 Act which permits the Associations to assess a fee for processing claims on behalf of claimant agencies violates equal protection. *Murphy v. Richland Memorial Hospital*, 317 S.C. 560, 455 S.E.2d 688 (1995) (party asserting unconstitutionality of statute on equal protection grounds has burden of showing classification is essentially arbitrary and without any reasonable basis). While those taxpayers whose claimant agencies did not use the Associations' services would not be assessed a fee, there is clearly a reasonable basis to permit the disparate treatment—the Associations should be permitted to recover a reasonable fee from taxpayers for consolidating and processing the setoffs for claimant agencies. Using the Associations' services results in cost savings and administrative convenience for both the DOR and those claimant agencies who use the Associations' service. *Id.* (to satisfy equal protection, statutory classification must bear reasonable relation to legislative purpose sought to be achieved, members of class must be treated alike under similar circumstances, and classification must rest on some rational basis).

We conclude the trial judge erred by holding the fee provision of the 1999 Act violated due process and equal protection.

### III. *ISSUES RELATING TO CLASS CERTIFICATION*

Defendants argue the trial court erred in granting class certification. We agree.

 Proponents of class certification bear the burden of proving five prerequisites under South Carolina law. *See Waller v. Seabrook Island Property Owners Ass'n*, 300 S.C. 465, 388 S.E.2d 799 (1990); Rule 23(a), SCRCP. The prerequisites are: 1) the class must be "so numerous that joinder of all members is impracticable;" 2) there must be "questions of law or fact common to the class;" 3) the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class;" 4) "the representative parties [must] fairly and adequately protect the interests of the class;" and 5)

"the amount in controversy [must] exceed[] one hundred dollars for each member of the class." Rule 23(a), SCRCP. The first four criteria are often referred to as the requirements for numerosity, commonality, typicality and adequacy of representation.

In deciding whether class certification is proper, the court must apply a rigorous analysis to determine each prerequisite is satisfied. *Waller v. Seabrook Island Property Owners Ass'n, supra.* We generally defer to the trial court's discretion in granting class certification absent an error of law.[12] *Id.*

Because failure to satisfy even one prerequisite is fatal to class certification we limit our discussion to the Named Plaintiffs' inability to prove commonality.[13] *See id.* (failure to satisfy all five prerequisites is fatal to class certification). To establish commonality, a party must show that "there are questions of law or fact common to the class." Rule 23, SCRCP. In practical terms this means the party must articulate the existence of "significant common, legal, or factual issues" which bind the proposed class together. *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 64 (S.D.Ohio 1991).

Critically, "[n]ot every issue in the case must be common to all class members." *O'Connor v. Boeing North Amer., Inc.*, 184 F.R.D. at 311, 329 (C.D.Cal.1998). Commonality is met only where the class shares a determinative issue. *See Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir.1990) ("certification is proper only when a determinative critical issue overshadows all other issues; and "question[s] [that are] in no

---

12. This case is significantly more complex due to the fact it is a bilateral class action. That is, Named Plaintiffs seek to have the court certify both a plaintiff class and a defendant class. Both the Federal Rules and the South Carolina Rules allow for bilateral class actions. *See* Rule 23(a), SCRCP, and Rule 23(a), FRCP (both using the introductory phrase "One or more members of a class may sue or be sued as representative parties on behalf of all . . .").

13. During oral argument, Named Plaintiffs asserted they were properly certified as class representatives of taxpayers who had been improperly assessed a collection fee during tax years 1996, 1997, and 1998. We disagree. We note the collection fees do not meet the monetary threshold of $100. Rule 23(a), SCRCP.

way dispositive and [which] simply propel the action into a posture where judicial scrutiny is necessary for just adjudication" are insufficient to establish commonality under Rule 23(a)(2), FRCP); *see also Peoples v. Wendover Funding Inc.,* 179 F.R.D. 492, 498 (D.Md.1998) ("a representative plaintiff cannot establish commonality . . . if the court must investigate each plaintiff's individual claim.").

Plaintiffs assert a "common thread" exists among its class members concerning whether Defendants' actions were proper in seizing income tax refunds without proper notice. We disagree.

There are at least two common questions of law in this case relating to the 1995 Act: 1) whether the Defendants' notices pursuant to the 1995 Act were deficient and 2) whether Plaintiffs were prejudiced by the alleged deficiency. Even if the notices were deficient, Plaintiffs cannot prevail unless they establish they were prejudiced by the insufficiency. *See Rose v. Beasley, supra; Porter v. South Carolina Public Serv. Comm'n, supra; Ballenger v. South Carolina Dep't of Health and Envtl. Control, supra.*

This is not a typical class action where minor factual differences exist among the individualized cases of class members. *See, e.g., Monaco v. Stone,* 187 F.R.D. 50 (E.D.N.Y. 1999. Instead, the factual differences (whether prejudice exists) are the crux of a predominant legal issue. A representative class cannot exist where the court must investigate each plaintiff's prejudice claim where it is one of the two predominate issues in the case. Requiring such individualized examination negates the benefits of a class action suit. *See O'Quinn v. Beach Associates,* 272 S.C. 95, 104, 249 S.E.2d 734, 738 (S.C.1978) ("The very purpose of a class action is to avoid the necessity of requiring each member of the class to prove the elements of the cause of action.").

Likewise, Named Plaintiffs cannot show that commonality exists for the defendant class. A court determines the existence of commonality among defendants by examining the plaintiffs' claims and the defendants' anticipated defenses. *See Kline v. Coldwell Banker & Co.,* 508 F.2d 226 (9th Cir.1974). As with Plaintiffs, Defendants' anticipated defenses center upon the predominant issue of whether Plaintiffs were

prejudiced by the deficient notices. Such a defense necessitates forming legal arguments around the individual facts of each case to show whether prejudice may or may not exist.

We conclude the trial judge erred by certifying both a plaintiff and a defendant class.[14]

## CONCLUSION

In summary, the trial judge abused his discretion by granting Plaintiffs' request to certify this matter as a bilateral class action. Accordingly, the Named Plaintiffs and Named Defendants are the proper parties in this matter.

Furthermore, while Named Defendants' setoff notices failed to comply with the requirements of the 1995 Act, the trial judge erred by failing to determine whether each Named Plaintiff was prejudiced by the inadequate notice. Accordingly, we reverse the entry of summary judgment. This matter is remanded to the circuit court which shall then remand the matter to the Named Defendant claimant agencies. The claimant agencies are hereby ordered to determine whether the Named Plaintiff whose income tax refund was setoff by the agency in tax years 1996, 1997, or 1998 was prejudiced by the inadequate notice. This determination involves consideration of the Named Defendants' defenses and counterclaims. If the claimant agency concludes the Named Plaintiff was prejudiced, it shall issue a refund of the setoff tax return in accordance with the Setoff Debt Collection Act. If the claimant agency concludes the Named Plaintiff was not prejudiced, the

---

14. While we decline to specifically address the requirement of typicality, we reject Named Plaintiffs' request for us to adopt the "juridical links doctrine." *See La Mar v. H & B Novelty and Loan Co.*, 489 F.2d 461 (9th Cir.1973); *Doss v. Long*, 93 F.R.D. 112 (N.D.Ga.1981). We note the doctrine has recently come under close scrutiny primarily due to its conflict with Article III standing issues. *See, e.g.*, William D. Henderson, *Reconciling the Juridical Links Doctrine with the Federal Rules of Civil Procedure and Article III*, 67 U. Chi. L.Rev. 1347 (2000). The doctrine also runs counter to this Court's previous decisions which hold that a plaintiff may not sue a defendant unless the plaintiff has suffered an injury at the hands of the defendant. *Edisto Fleets, Inc., v. South Carolina Tax Commission*, 256 S.C. 350, 182 S.E.2d 713 (1971) (A plaintiff cannot maintain a class action where record indicates he was not directly harmed by defendants actions); *Furman University v. Livingston*, 244 S.C. 200, 136 S.E.2d 254 (1964) (only a taxpayer directly affected by erroneously paying taxes has a right to seek a refund).

Named Plaintiff may appeal in accordance with the provisions of § 12–56–65 (2000).

The trial judge properly held the Named Defendants and Associations were not entitled to assess collection fees against the Named Plaintiffs under the 1995 Act unless the fees accrued through contract, subrogation, tort, operation of law, or any other legal theory. Accordingly, in addition to the issue of prejudice, each Named Defendant claimant agency shall determine whether it or, if applicable, the Associations, were authorized to assess a collection fee from the Named Plaintiff.[15] If the claimant agency determines it was not authorized to collect all or a portion of the assessed fee, the Named Defendant shall refund the excess amount.

Accordingly, the orders of the trial judge are **AFFIRMED IN PART, REVERSED IN PART, and REMANDED** for further action in compliance with this opinion.

TOAL, C.J., WALLER and PLEICONES, JJ., and Acting Justice HENRY F. FLOYD, concur.

---

**15.** We recognize the trial judge considered whether some Named Defendants had legal theories which permitted them to assess collection costs against the Named Plaintiffs. Because it is unclear which Named Defendants the trial judge considered, this issue is remanded for consideration by all Named Defendant claimant agencies.