**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-2147**

---

KENNETH HENSLEY, as adoptive parents of BLH; ANGELA HENSLEY, as adoptive parents of BLH; BLH, by parents-general guardians Kenneth and Angela Hensley,

    Plaintiffs - Appellees,

    v.

LILLIAN KOLLER, individually and in her official capacity as State Director for the South Carolina Department of Social Services; ELIZABETH PATTERSON, individually as Former Director of the South Carolina Department of Social Services; KIM AYDLETTE, individually as Former Director of the South Carolina Department of Social Services; KATHLEEN HAYES, individually as Former Director of the South Carolina Department of Social Services,

    Defendants - Appellants,

    and

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES,

    Defendant.

---

Appeal from the United States District Court for the District of South Carolina, at Spartanburg.  G. Ross Anderson, Jr., Senior District Judge.  (7:11-cv-02827-GRA)

---

Argued:  May 16, 2013       Decided:  July 3, 2013

---

Before MOTZ, DAVIS, and WYNN, Circuit Judges.

---

Reversed and remanded by published opinion.  Judge Motz wrote

the opinion, in which Judge Davis and Judge Wynn joined.

—————————

**ARGUED:** Andrew Lindemann, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellants. Timothy Ryan Langley, HODGE & LANGLEY LAW FIRM, P.C., Spartanburg, South Carolina, for Appellees. **ON BRIEF:** William H. Davidson, II, Joel S. Hughes, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellants. Charles J. Hodge, HODGE & LANGLEY LAW FIRM, P.C., Spartanburg, South Carolina; James Fletcher Thompson, JAMES FLETCHER THOMPSON, LLC, Spartanburg, South Carolina, for Appellees.

—————————

DIANA GRIBBON MOTZ, Circuit Judge:

A minor, by and through her adopted parents, brought this class action challenging South Carolina's reduction of monthly adoption assistance benefits. She claims the reduction violates the Adoption Assistance and Child Welfare Act, and seeks declaratory and injunctive relief, as well as money damages. The district court certified the class and denied the parties' cross-motions for summary judgment. For the reasons that follow, we reverse and remand.

I.

The South Carolina Department of Social Services ("DSS") provides adoption assistance subsidies and foster care maintenance payments pursuant to federal funding authorized by the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 et seq. (2006) ("the Act"). To receive funding under the Act, a state must develop a plan for a subsidy and maintenance program and must obtain approval of that plan by the United States Secretary of Health and Human Services. See id. § 671(a).

The Act sets forth specific requirements governing foster care maintenance payments, id. § 672, and adoption assistance payments, id. § 673. With respect to the latter, a state with an approved plan "shall enter into adoption assistance

3

agreements . . . with the adoptive parents of children with special needs." Id. § 673(a)(1)(A). The Act further provides:

> The amount of the [adoption assistance] payments . . . shall be determined through agreement between the adoptive parents and the State . . . , which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the adopting parents . . . , depending upon changes in such circumstances. However, in no case may the amount of the adoption assistance payment . . . exceed the foster care maintenance payment which would have been paid during the period if the child with respect to whom the adoption assistance payment is made had been in a foster family home.

Id. § 673(a)(3). The adoption subsidy agreement between DSS and adoptive parents, referenced in § 673, establishes the payment rate for an adoptive child.

## II.

In April 1997, BLH, a minor child, was placed in temporary foster care with Angela and Kenneth Hensley. Beginning in 1998, DSS approved monthly foster care maintenance payments of $675 to Mr. and Mrs. Hensley for the care of BLH. These payments included a "Difficulty of Care Rate" upward adjustment because DSS found BLH to be a special needs child. In early 1999, Mr. and Mrs. Hensley applied for a court order declaring them BLH's adoptive parents.

In preparing their application, Mr. and Mrs. Hensley sought to convert the foster care maintenance payment into an adoption

4

assistance subsidy. On March 22, 1999, DSS and Mr. and Mrs. Hensley entered into an Adoption Subsidy Agreement under which DSS agreed to furnish the Hensleys with monthly adoption assistance payments of $675. Two months later, a state court issued an order declaring Mr. and Mrs. Hensley the adoptive parents of BLH. Mr. and Mrs. Hensley continued to receive the $675 adoption subsidy monthly for three years.

But in June 2002, then-DSS Director Elizabeth G. Patterson announced that as a result of "South Carolina's budget crisis," DSS would reduce by twenty dollars all monthly foster care maintenance payments and adoption assistance subsidies, beginning that July. Pursuant to this across-the-board reduction, BLH's subsidy decreased to $655. In 2004, DSS rescinded the twenty dollar reduction to foster care maintenance payments, but DSS has never rescinded the 2002 reduction to adoption assistance subsidies; thus, for BLH, the latter remains $655.

In September 2011, BLH, by and through Mr. and Mrs. Hensley (collectively, "the Hensleys"), filed in state court a class action under 42 U.S.C. § 1983 against Lillian Koller, individually and in her official capacity as director of DSS. Koller removed the action to federal court. The Hensleys amended their complaint three times, removed the South Carolina Department of Social Services as a party, and added Patterson,

5

Kim Aydlette, and Kathleen Hayes, individually as former directors of DSS (collectively, with Koller, "the Directors").

The Directors then moved for summary judgment. The Hensleys opposed the motion and filed a combined cross-motion for summary judgment and motion for class certification. After the district court heard argument, it granted the Hensleys' motion for class certification and denied the cross-motions for summary judgment. The Directors timely noted this appeal.

## III.

We have jurisdiction over this interlocutory appeal because the Directors' assertion of qualified immunity from suit presents purely legal questions. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We review de novo a district court's denial of qualified immunity. Johnson v. Caudill, 475 F.3d 645, 650 (4th Cir. 2007). In doing so, "[t]o the extent that the district court has not fully set forth the facts on which its decision is based, we assume the facts that may reasonably be inferred from the record when viewed in the light most favorable to the plaintiff." See Waterman v. Batton, 393 F.3d 471, 473 (4th Cir. 2005) (citing Winfield v. Bass, 106 F.3d 525, 533–35 (4th Cir. 1997) (en banc)).

Qualified immunity shields government officials performing discretionary functions from suits for civil damages under

6

§ 1983.  <u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 306 (4th Cir. 2006).  The qualified immunity inquiry asks (1) whether an official violated a federal right, and (2) whether that right was clearly established at the time the official acted.  See <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).  A court may address the second question -- whether a right is clearly established -- without ruling on the first -- existence of the right.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 236 (2009).  But "there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong."  <u>Id.</u> at 236.

This is such a case.  The Hensleys seek injunctive and declaratory relief in addition to money damages.  A determination that a right is not clearly established only shields a state official from money damages.  See <u>Akers v. Caperton</u>, 998 F.2d 220, 226-28 (4th Cir. 1982) (holding clearly established law protected state officials only from liability for money damages, and so remanding case for consideration of claim for equitable relief).  Thus, if we resolved the case on the ground that no clearly established law permits an award of damages against the state officials, the case would necessarily return to the district court for a determination of the availability of injunctive and declaratory relief.  Here, the

7

"conservation of judicial resources," Pearson, 555 U.S. at 236, weighs strongly in favor of resolving the question of whether the Directors violated the Hensleys' federal rights.

For this reason, we begin (and end) with the first step of Saucier's two-step inquiry -- determination of whether § 673(a)(3) creates a privately enforceable right to parental concurrence, which the Directors have violated.

## IV.

"[U]nless Congress speak[s] with a clear voice, and manifests an unambiguous intent to create individually enforceable rights, federal funding provisions provide no basis for private enforcement by § 1983." Gonzaga Univ. v. Doe, 536 U.S. 273, 280 (2002) (internal quotation marks omitted). In Blessing v. Freestone, the Supreme Court announced a three-factor test to determine whether a particular statutory provision gives rise to a federal right privately enforceable under 42 U.S.C. § 1983:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

520 U.S. 329, 340-41 (1997) (internal quotation marks and

8

citations omitted). Of course, even if a statute meets the _Blessing_ three-factor test establishing a privately enforceable right, a plaintiff cannot recover unless it can properly plead a violation of that statutory right. In this case we hold that the statute, § 673(a)(3), does set forth a privately enforceable right, but that the Hensleys have failed to plead any violation of that right by the Directors.

A.

Following the _Blessing_ three-factor test, we initially consider whether the Hensleys have pled a violation of a federal right.

As to the first _Blessing_ question, whether § 673(a)(3) "confer[s] rights on a particular class of persons," _Gonzaga_, 536 U.S. at 285 (internal quotation marks omitted), we agree with the only other circuit to address that question that § 673(a)(3) does "evinc[e] a clear intent to create a federal right," see _ASW v. Oregon_, 424 F.3d 970, 975-76 (9th Cir. 2005). For the Act provides that the adoption assistance payments:

> shall be determined through agreement between the adoptive parents and the State . . . , which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the adopting parents . . . , depending upon changes in such circumstances.

42 U.S.C. § 673(a)(3) (emphasis added).[1]

In considering the second Blessing factor, we determine whether the asserted right is "so 'vague and amorphous' that its enforcement would strain judicial competence." 520 U.S. at 340-41. The Directors argue that the term "concurrence" is too "vague[] and amorphous[]" to create an enforceable right. We disagree. "In interpreting the plain language of a statute, we give the terms their ordinary, contemporary, common meaning." Minor v. Bostwick Labs., Inc., 669 F.3d 428, 435 (4th Cir. 2012) (internal quotation marks omitted). Black's Law Dictionary defines "concurrence" as "[a]greement; assent." Black's Law Dictionary (9th ed. 2009). Thus, § 673(a)(3) clearly provides that a state may not readjust an adoption assistance payment amount without an adoptive parent's "concurrence," i.e., agreement or assent.

Turning to Blessing's final factor, we examine whether the statute "unambiguously impose[s] a binding obligation on the State[]." 520 U.S. at 341. To do so we must resolve whether

---

[1] The Directors contend that the Act cannot be challenged by BLH, or Mr. and Mrs. Hensley in their capacity "as adoptive parents of BLH," because it contemplates only an agreement between the state and the adoptive parents. This argument fails. The Act provides that its stated purpose is to "enabl[e] each State to provide . . . adoption assistance for children with special needs." 42 U.S.C. § 670 (emphasis added). This language clearly reveals Congressional "inten[t] to confer individual rights upon" this "class of beneficiaries." See Gonzaga, 536 U.S. at 285.

"the provision giving rise to the asserted right" is "couched in mandatory, rather than precatory, terms." Id. In this case, the operative "provision," § 673(a)(3), requires states to enter into agreements with adoptive parents to determine adoption assistance payments. It further requires that such agreed determinations "take into consideration the circumstances of the adopting parents and the needs of the child being adopted." Id. See ASW, 424 F.3d at 976 ("[T]here is no ambiguity as to what [states must] do under § 673(a)(3) as a condition of receiving federal funding under [the Act]."). And if a state wants to readjust the agreed-to payments, it must have "the concurrence of the adopting parents" to do so, with the limited exception we address below. 42 U.S.C. § 673(a)(3).

For these reasons, we conclude that, pursuant to the Blessing test, § 673(a)(3) does give rise to a limited privately enforceable federal right cognizable under 42 U.S.C. § 1983.

B.

But only violations of such enforceable rights can provide a basis for recovery. See Saucier, 533 U.S. at 200 ("[T]he first inquiry must be whether a . . . right would have been violated on the facts alleged . . . ." (emphasis added)). Thus, we must also determine whether the Hensleys have alleged facts establishing that the Directors violated the Hensleys' rights under § 673(a)(3) when the Directors reduced adoption assistance

11

subsidies.

The statute's limited exception speaks to this very question. Section 673(a)(3) provides:

> in no case may the amount of the adoption assistance payment . . . exceed the foster care maintenance payment which would have been paid during the period if the child with respect to whom the adoption assistance payment is made had been in a foster family home.

42 U.S.C. § 673(a)(3). The most logical reading of this language is that the statute prohibits adoption assistance subsidies that exceed foster care maintenance payments.[2] As a result, § 673(a)(3) establishes a right to parental concurrence in subsidy readjustment determinations except when the subsidy must be reduced due to reductions in foster care maintenance payments.

It is undisputed that DSS reduced the foster care maintenance payments by twenty dollars at the same time DSS reduced the adoption assistance subsidy by the same amount. The Hensleys do not contend that at any time prior to the 2002 reduction, the adoption assistance subsidy they received for BLH was less than BLH's $675 foster care maintenance payment.

---

[2] The policy manual issued by the United States Department of Health & Human Services, which administers the federal funding authorized by the Act, supports this reading of § 673(a)(3). See Admin. for Children & Families, U.S. Dep't of Health & Human Servs., Child Welfare Policy Manual § 8.2D.4 (2012).

It was only in 2002, when South Carolina decreased by twenty dollars all foster care maintenance payments, that the State also decreased BLH's adoption assistance subsidy by twenty dollars. The State's failure to do so would have violated federal law. For, under § 673(a)(3), a failure to reduce BLH's adoption assistance payment would have resulted in a payment "exceed[ing] the foster care maintenance payment" she would have received had she remained in foster care. For these reasons, the Hensleys cannot establish that the Directors violated the Hensleys' rights under the Act and therefore the Directors are entitled to qualified immunity.[3]

V.

For the reasons stated, we reverse the judgment of the district court and remand the case for entry of a judgment consistent with this opinion.

REVERSED and REMANDED

---

[3] The Hensleys also argue that the Directors violated their parental concurrence rights when DSS later increased foster care maintenance payments without also increasing the adoption assistance subsidy. However, the 2004 increase did not "readjust" the amount of the adoption assistance subsidies; accordingly, the Directors' 2004 action did not trigger -- let alone violate -- the parental concurrence requirement.

13