MCDONALD, J.:
This case involves the alleged breach of adoption assistance subsidy [AAS] agreements by the South Carolina Department of Social Services (DSS). DSS contends (1) the circuit court erred in certifying a class when the class representative failed to prove the necessary element of commonality, and (2) the class certification and notification process violates the statutory and constitutional rights of potential class members and their families. We agree that the circuit court erred in granting class certification.
Facts and Procedural History
In April 2013, minor BLH brought this action against DSS through her adoptive parents, filing her complaint as a potential class action on behalf of "All children, age 19 or younger on the date of the Motion for Class Certification (January 6, 2012), who are current and former beneficiaries of existing adoption assistance subsidy agreements between their adoptive parents and [DSS], executed on or before June 20, 2002."[1] The complaint alleged DSS breached its AAS contracts with class members by unilaterally cutting adoption assistance benefits to special *640 needs children by twenty dollars per month, beginning in June 2002.[2]
In October 2013, BLH moved to certify the class pursuant to Rule 23, SCRCP.[3] At an April 2014 hearing, BLH argued the commonality requirement was satisfied because DSS cut all class members' benefits at the same time and in like manner. DSS disagreed, relying on Gardner v. South Carolina Department of Revenue , 353 S.C. 1, 577 S.E.2d 190 (2003), to support its argument.
After the hearing, the circuit court issued a Form 4 order granting class certification. DSS moved for reconsideration and requested a formal order addressing its commonality argument.
On May 21, 2014, the circuit court issued a more detailed order. Concerning commonality, the court ruled there were two "critical common questions of law and fact," namely: (1) whether the benefits cut breached the contracts with the families of adopted children or violated the implied duty of good faith and fair dealing, and (2) whether, in light of DSS's reinstatement of benefits for families of foster care children, the failure to reinstate benefits for families of adopted children breached the contracts or violated the implied duty of good faith and fair dealing. Separately, the court ordered an "opt-out" notice procedure and ordered DSS-which the court found "regularly corresponds or has previously corresponded with all class members"-to serve each class member a notice "which shall advise them of the facts of this case and their right to opt out within 30 days."
In August 2014, DSS filed a second motion to reconsider and requested oral argument. In the motion, DSS again asked the court to rule on its position that BLH could not satisfy the commonality element required by Rule 23 and Gardner . DSS further argued the court erred in establishing notice procedures without giving DSS an opportunity to be heard and in requiring DSS to bear the burden and expense of notifying potential class members.
On September 16, 2014, the circuit court filed an amended order, but the only change related to the class certification issue was the court's inclusion of language indicating it had also relied on two affidavits.[4] On September 30, 2014, DSS filed a third motion for reconsideration requesting a formal order adjudicating the issues raised in its second motion for reconsideration.
On October 16, 2014, DSS appealed; the court of appeals stayed the appeal until the circuit court could rule on DSS's third motion for reconsideration.
In February 2015, the circuit court held a hearing on the third motion for reconsideration. Regarding the notice issue, DSS consented to providing BLH with information about potential class members but asserted it should not be required to notify potential class members of the opt-out procedures.
Additionally, DSS again challenged the commonality requirement, citing Gardner . On the record, the circuit court denied reconsideration of the class certification, but granted DSS's request to make BLH responsible for notifying potential members of the class of the opt-out procedures. However, DSS was required to provide BLH with information about potential class members within ninety days of the circuit court's filing of its formal order. The parties agreed the formal order would include language protecting the confidentiality of the parties involved. The court asked BLH to prepare a proposed order and submit it to DSS.
*641 On April 1, 2015, DSS sent the circuit court and BLH an alternative proposed order. DSS's proposed order included language that allowed for the production of names and addresses but "protect[ed] the identities of persons who have been adopted to the extent possible." DSS expressed concern that the class action notices might be the "first information" some class members receive that informs them they were adopted. DSS also questioned what legal authority minors would have to opt out of a class action. DSS requested that these issues be addressed before the notices were mailed in order to ensure DSS and its lawyers had no liability for "sending ... adopted children a class action notice that tells them that they were adopted."
BLH responded that the procedures in its proposed order provided for confidentiality and it saw "no reason" for the notices to inform the children that they were adopted. BLH also clarified the notices would be sent to the children's adoptive parents, not the children themselves. In an email two days later, DSS further objected to language in BLH's proposed order requiring that it provide copies of the potential class members' AAS contracts, arguing there had been no discussion about whether DSS would have to "produce thousands of contracts within [the] 90 day timeframe." DSS also asserted that mailing the notices to the adoptive parents did not solve the confidentiality problem because some of the children were no longer minors. Finally, DSS argued there was no way to explain the suit to potential class members so that they could make an informed opt-out decision without mentioning that they were adopted.
On April 30, 2015, the circuit court issued another order. As to commonality, the court found it determinative that DSS had stipulated that each of the potential class members signed a contract for AAS payments, and there was a subsequent twenty dollar reduction in payments. The court stated, "Given the abundance of common issues, ease of [DSS's] access to the information necessary for calculating damages, and general purpose of class actions in consolidating proof of the elements of the cause of action, the element of commonality is met in the case at bar." Regarding the notice procedure, the court found "good cause" was shown under the relevant adoption confidentiality law to require DSS to provide the names and addresses of potential class members to BLH. However, the court ordered the information was to remain confidential, was to be redacted in public filings, and could not be disseminated to third parties. All correspondence to class members was to be marked "Confidential." On June 8, 2015, DSS amended its notice of appeal to include the April 30 order.
Law and Analysis
A. Appealability
"The general rule established by [our supreme court] is that class certification orders are not immediately appealable." Salmonsen v. CGD, Inc. , 377 S.C. 442, 448, 661 S.E.2d 81, 85 (2008). The supreme court has, however, "reviewed interlocutory orders involving class certification when they contain other appealable issues." Id. at 449, 661 S.E.2d at 85. DSS argues the challenged orders are immediately appealable because if the identities of the class members are revealed, the resulting harm cannot be corrected. To support its argument, DSS cites Doe v. Howe , 362 S.C. 212, 607 S.E.2d 354 (Ct. App. 2004), and Ex Parte Capital U-Drive-It, Inc. , 369 S.C. 1, 630 S.E.2d 464 (2006).
In Howe , a client attempted to sue his attorney anonymously for breach of fiduciary duty and professional negligence. 362 S.C. at 215, 607 S.E.2d at 355. The client moved to proceed anonymously because the underlying matter was a civil suit alleging sexual abuse, but the circuit court denied the motion. Id. On appeal, this court explained that "[u]nder the collateral order analysis employed by the federal courts, the order is appealable if it (1) conclusively determines the question, (2) resolves an important question independent of the merits, and (3) is effectively unreviewable on appeal from a final judgment." Id. at 216, 607 S.E.2d at 356. Under this framework, this court held the appealability criteria were met because the order denying the client's motion to proceed anonymously "ha[d] the effect of revealing his identity, the very thing *642 he was seeking to keep confidential." Id. at 217, 607 S.E.2d at 356.
Ex parte Capital involved a company that attempted to unseal the divorce records of an employee who had admitted to embezzling from the company. 369 S.C. at 4-5, 630 S.E.2d at 466. The employee appealed an order permitting the company to examine the divorce records to inspect the employee's financial representations. Id. at 5, 630 S.E.2d at 466. Our supreme court held the order unsealing the records "determined a substantial matter forming the whole or part of the family court proceeding in which [the company] sought access to the record of the [employee's] divorce. No further action is required in the family court to determine the parties' rights; therefore, the order is immediately appealable...." Id. at 7-8, 630 S.E.2d at 468. "Moreover, [the supreme court] agree[d] with courts which have been inclined to find such an order immediately appealable because, after a court file is unsealed and the information released, no appellate remedy is likely to repair any damage done by an improper disclosure." Id. at 8, 630 S.E.2d at 468. The court wrote that "[c]ompelling a party that disputes an unsealing order to forgo an appeal until the conclusion of the underlying litigation would let the cat out of the bag, without any effective way of recapturing it if the [lower] court's directive was ultimately found to be erroneous." Id. (quoting Siedle v. Putnam Invs., Inc. , 147 F.3d 7, 9 (1st Cir. 1998) ).
We find Howe and Ex parte Capital instructive. Like those cases, this case involves the disclosure of personal and potentially sensitive information for which there would be "no appellate remedy ... likely to repair any damage done by an improper disclosure." Ex parte Capital , 369 S.C. at 8, 630 S.E.2d at 468. Therefore, we hold this case is properly before the appellate court.
B. Commonality
DSS asserts BLH cannot satisfy the necessary element of commonality because numerous individualized inquiries of potential class members are needed in this case. We agree.
"Proponents of class certification bear the burden of proving five prerequisites under South Carolina law." Gardner , 353 S.C. at 20, 577 S.E.2d at 200. "In deciding whether class certification is proper, the court must apply a rigorous analysis to determine each prerequisite is satisfied." Id. at 21, 577 S.E.2d at 200. "We generally defer to the trial court's discretion in granting class certification absent an error of law." Id.
Failure to establish any prerequisite is fatal to class certification; therefore, we limit our discussion to BLH's inability to prove commonality. Id. ("Because failure to satisfy even one prerequisite is fatal to class certification we limit our discussion to the Named Plaintiffs' inability to prove commonality."). "To establish commonality, a party must show that 'there are questions of law or fact common to the class.' " Id. (quoting Rule 23, SCRCP ). "In practical terms this means the party must articulate the existence of 'significant common, legal, or factual issues' which bind the proposed class together." Id. (quoting Boggs v. Divested Atomic Corp. , 141 F.R.D. 58, 64 (S.D. Ohio 1991) ). "Critically, '[n]ot every issue in the case must be common to all class members.' " Id. (quoting O'Connor v. Boeing N. Amer., Inc. , 184 F.R.D. 311, 329 (C.D. Cal. 1998) ). "Commonality is met only where the class shares a determinative issue." Id. at 21, 577 S.E.2d at 200-01.
Gardner involved several taxpayers who sued the Department of Revenue and other agencies for improperly seizing their tax refunds due to their outstanding debts with the agencies. 353 S.C. at 8, 577 S.E.2d at 194. The circuit court certified a class " 'composed of all persons who had their 1996, 1997, or 1998 South Carolina income tax refund seized' by certain enumerated agencies." Id. at 19 n.11, 577 S.E.2d at 199 n.11. The taxpayers asserted the "common thread" was that they all had their refunds seized without proper notice. Id. at 22, 577 S.E.2d at 201.
On appeal, the supreme court found there were two common questions of law: (1) whether the notices were deficient and (2) whether the deficiency prejudiced the taxpayers. Id. However, the court ultimately held there was no commonality, explaining:
*643 This is not a typical class action where minor factual differences exist among the individualized cases of class members. Instead, the factual differences (whether prejudice exists) are the crux of a predominant legal issue. A representative class cannot exist where the court must investigate each plaintiff's prejudice claim where it is one of the two predominate issues in the case. Requiring such individualized examination negates the benefits of a class action suit.
Id. (citation omitted).
We find this case analogous to Gardner as there are more than "minor factual differences" among the various class members. This is not a case in which the relevant inquiry merely involves plaintiffs who "may be entitled to different amounts of damages." See McGann v. Mungo , 287 S.C. 561, 569, 340 S.E.2d 154, 158 (1986) (recognizing Rule 23(a)(2)"does not demand that all questions of law and fact be common"). Several issues here will require individualized inquiry, such as whether each set of adoptive parents accepted or consented to the reduction in payments, exhausted any available administrative remedies, entered into renewal agreements, or at any pertinent time terminated their agreements. Accordingly, we hold the necessity of such individualized inquiries "negates the benefits of a class action suit." Id.
Conclusion
We reverse the grant of class certification.[5]
GEATHERS and HILL, JJ., concur.

The circuit court stated there were approximately 4,000 affected children. DSS cut similar subsidies for special needs children in foster care as well; however, DSS restored the foster care benefits in 2004.

In September 2011, BLH's adoptive parents sued DSS and four former directors on the same facts in a case removed to federal court. See Hensley v. Koller , 722 F.3d 177 (4th Cir. 2013). The District Court certified the class, but the Fourth Circuit concluded parents could not establish the DSS directors violated their clearly established rights under the federal Adoption Assistance and Child Welfare Act of 1980. Id. at 180, 183. Thus, the Fourth Circuit found the directors were entitled to qualified immunity. Id. at 183.

See Rule 23(a), SCRCP (setting forth numerosity, commonality, typicality, adequacy of representation, and the amount in controversy as the five elements that must be satisfied for class certification).

These affidavits do not appear in the record, and any issues concerning them were not appealed.

Because we find BLH failed to establish commonality, it is unnecessary that we address the constitutional and statutory concerns raised in DSS's challenge to the notification process. See Gardner , 353 S.C. at 20, 577 S.E.2d at 200 (limiting its consideration to the element of commonality).