500 S.E.2d 183

**Bobby BALLENGER, Levonia Ballenger, Drucilla Collins, Ruby Drummond, Arthur Irby, Vivian Jones, Doris Norris, Kay F. Norris, and J.W. Robinson, and Citizens Local Environmental Action Network, Inc. (CLEAN), Appellants,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Waste Management of South Carolina, Inc., Respondents.**

**No. 2767.**

Court of Appeals of South Carolina.

Submitted May 6, 1998.

Decided May 6, 1998.

Rehearing Denied June 18, 1998.

248

Gary W. Poliakoff, of Poliakoff, Poole & Associates, Spartanburg, for appellants.

Nancy S. Layman, of South Carolina Department of Health and Environmental Control, for respondent South Carolina Department of Health and Environmental Control.

Sara S. Rogers and Margaret M. Fox, both of McNair Law Firm, Columbia; and James W. Potter, of Nexsen, Pruet, Jacobs & Pollard, Columbia, for respondent Waste Management of South Carolina, Inc.

## ORDER GRANTING PETITION FOR REHEARING AND SUBSTITUTING OPINION

PER CURIAM:

The court grants the respondents' Petition for Rehearing in this case. It is hereby ordered that Opinion No. 2767 be withdrawn and the following opinion be substituted.

HEARN, Judge:

Nine individual plaintiffs and Citizens Local Environmental Action Network, Inc. (CLEAN) brought this action contesting the South Carolina Department of Health and Environmental Control's (DHEC) issuance of a permit to Waste Management of South Carolina, Inc. (WMSC) for expansion of an existing landfill. We affirm in part, reverse in part, and remand.

### FACTS

WMSC has operated Palmetto Landfill and Recycling Center in Spartanburg County since 1979. In February 1992, WMSC submitted a permit application to DHEC for an expansion of the landfill consisting of 170 additional acres, an increase in the vertical height of the landfill, and an increase in the annual tonnage rate. As part of the permitting process, a public meeting was held on August 24, 1992, and a public hearing was held on May 11, 1993. On July 27, 1993, DHEC approved the expansion permit.

On August 11, 1993, the citizens filed an appeal of DHEC's issuance of the permit. WMSC also appealed the issuance of the permit, based on certain restrictions placed on the permit

by DHEC. Brian S. Wade was appointed as the designated hearing officer for the case on September 21, 1993. On February 4, 1994, the citizens filed six separate motions to dismiss the permit, citing various instances of noncompliance with the permitting procedures required by South Carolina Code section 44–96–470. S.C.Code Ann. § 44–96–470 (Supp. 1996). A three day hearing on the motions was held before the hearing officer in February 1994.

In September 1994, the hearing officer issued his report finding numerous violations in the permitting process. The hearing officer recommended that the permit be remanded so that DHEC could comply with statutory and due process requirements. DHEC and WMSC appealed the hearing officer's recommendation to the Board of Health and Environmental Control. The Board rejected the hearing officer's report and upheld the issuance of the permit. The citizens appealed the Board's decision to the circuit court. In June 1996, Thomas J. DeZern, sitting as special circuit court judge, affirmed the Board's decision to uphold the permit.

## *STANDARD OF REVIEW*

Under the Administrative Procedures Act, the decision of an administrative agency will not be overruled on appeal unless "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(6)(e) (Supp.1996). This court will not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. S.C.Code Ann. § 1–23–380(A)(6) (Supp.1996).

## *I.*

Appellants first argue that the trial judge erred in finding WMSC had complied with the requirements for conducting the "facility issues negotiation" as required by South Carolina Code section 44–96–470. S.C.Code Ann. § 44–96–470 (Supp. 1996). Appellants contend WMSC gave false and misleading information at the public meetings. Appellants also argue the trial judge erred in finding WMSC had given proper notice to the affected counties as required by the facility issues negotiation process.

Under the South Carolina Solid Waste Policy and Management Act, any permit applicant who wishes to open or expand a waste disposal facility must initiate a "facility issues negotiation process" with affected local residents. S.C.Code Ann. § 44–96–470 (Supp.1996). Within fifteen days after submitting the permit application, the applicant must publicize the submission in a newspaper of general circulation serving each affected county and must notify each local county government. In addition, the applicant must display the public notice in the courthouse of each notified county. S.C.Code Ann. § 44–96–470(A)(1)–(3) (Supp.1996). The notice must contain the name and address of the applicant, the nature of the proposed facility, a description of the proposed site, a locational map showing the proposed site, and "such other information as is necessary to fully inform the public to be determined by regulations to be promulgated by [DHEC]." S.C.Code Ann. § 44–96–470(A)(4) (Supp.1996).

DHEC then reviews the application and makes a determination as to the suitability of the proposed site. Once DHEC has made this assessment, it must then notify the applicant, the host local government, and any other person who has made a written request to DHEC for notification of its decision. S.C.Code Ann. § 44–96–470(B) (Supp.1996). After receiving notification from DHEC that the location is suitable, the applicant must notify the public of the determination within fifteen days, following the same procedure as for the initial public notification. S.C.Code Ann. § 44–96–470 (Supp. 1996).

Once the host local government has received notice from DHEC of its determination, the local government must advertise and hold a public meeting to inform affected residents and landowners of the proposed site and of the opportunity to engage in a facility issues negotiation process. S.C.Code Ann. § 44–96–470 (Supp.1996). Residents then have thirty days to file with the local government a written petition signed by at least twenty-five affected persons. S.C.Code Ann. § 44–96–470(F) (Supp.1996). After receiving the petition, the host local government must initiate a negotiation process between the citizens and the applicant consisting of at least three meetings between the two groups. S.C.Code Ann. §§ 44–96–470(H)–(K) (Supp.1996).

The negotiation is nonbinding and is not to address "technical environmental issues" which are required by law and by regulation to be addressed in the permitting process, or "environmental permit conditions." S.C.Code Ann. §§ 44–96–470(E), (K), & (M) (Supp.1996). Issues which may be negotiated include, but are not limited to: operational issues, such as hours of operation; recycling efforts that may be implemented; protection of property values; traffic routing and road maintenance; and the establishment of local advisory committees. S.C.Code Ann. § 44–96–470(M). The parties then notify DHEC of their success or failure in reaching a consensus on negotiated issues, at which time DHEC "shall proceed to process the permit." S.C.Code Ann. § 44–96–470(S) (Supp. 1996).

In the present case, the first public meeting was held on August 24, 1992. Another public hearing was hosted by Spartanburg County on May 11, 1993. However, Appellants did not submit a petition after either meeting to initiate the next step of the negotiation process. Appellants assert that WMSC gave false and misleading information to the public at the meetings, which they relied on in deciding not to file a petition. Appellants argue their due process rights were violated because they were not able to continue with the facility issues negotiation process.

■ Appellants contend WMSC gave false and misleading information on nine separate issues: groundwater contamination, the acceptance of out-of-state waste, the waste screening process, the acceptance of hazardous waste, the liner system used by the facility, WMSC's compliance with state, federal, and local regulations, discharge of contaminants into groundwater, the vertical expansion of the facility, and the company's financial responsibility to the public. The hearing officer found that WMSC gave false and misleading information to the public by referring only to the lateral expansion of the facility and not to the vertical expansion, by failing to inform the public that DHEC had already detected groundwater contamination in areas around the landfill, and in the company's representations concerning its financial responsibility, acceptance of out-of-state wastes, and waste screening process. According to the hearing officer's report:

[I]n view of the misleading statements made by WMSC . . ., seemingly calculated to lull the public into complacency and to mask the characteristics of the project which might be of concern to the public, it cannot be said that the public was given adequate notice of the nature of the project. The utter lack of information provided to the public certainly provides the "good cause" necessary to excuse petitioners from raising issues and arguments during the public notice and comment period. In addition, this deficiency in the public notice process would render the agency's action in approving the permit void.

While the record before us indicates that WMSC misled the public as to many of these issues, each subject on which Appellants were allegedly misled involves technical environmental issues or environmental permit conditions which are required by law and by regulation to be addressed in the permitting process. Under sections 44–96–470(E) and 44–96–470(M), these are not negotiable issues under the facility issues negotiation process. Instead, they are issues to be addressed by DHEC during the permitting process. Even if Appellants had petitioned to continue with the negotiation process, these issues would not have been addressed in further negotiations between the parties. We therefore fail to see how misrepresentation on these issues would have prejudiced Appellants from continuing negotiations with WMSC on operational issues.

■ Appellants also argue WMSC did not give proper notice to the affected counties as required by sections 44–96–470(A)(1)–(3) of the South Carolina Code. S.C.Code Ann. §§ 44–96–470(A)(1)–(3) (Supp.1996). Section 44–96–470 requires three rounds of notice. The first round of notice is the responsibility of the permit applicant and must be published within 15 days of the submission of the permit application. S.C.Code Ann. § 44–96–479(A) (Supp.1997). The purpose of this notice is to notify counties which rely on the landfill about the proposed expansion. If the application is for a facility serving *only one* county, the applicant must publish public notice *only* in a newspaper of general circulation serving that county, and must give written notice of the permit application to each local government within that county. S.C.Code Ann. § 44–96–470(A)(1) (Supp.1997).

With regard to facilities serving *more than one* county, the statute provides:

> If the application is for a facility serving more than one county, the public notice shall be published in a newspaper of general circulation serving each affected county, and each local government within such counties shall be further notified in writing of the permit application.

S.C.Code Ann. § 44–96–470(A)(2) (Supp.1997). The term "affected county" is not defined in the statute, however WMSC argues it served each "affected county" by notifying each county in its "service area," as defined in its permit. After confirming with DHEC its intent to notify those counties in its service areas, WMSC provided notice to Anderson, Cherokee, Greenville, Spartanburg, Oconee, Pickens, and Laurens Counties.

The second round of notice required under the Act is also the responsibility of the applicant and is made after DHEC has made a determination as to the suitability or the unsuitability of the site. S.C.Code Ann. § 44–96–470(C) (Supp.1997). The statute requires the applicant to notify the affected counties in the same manner as in the first round. *Id.*

The third round of notice deals specifically with the facility issues negotiation process and is given by the host local government rather than the applicant. The statute requires the host local government to advertise and hold a public meeting to inform "affected residents and landowners" of the facility issues negotiation process. S.C.Code Ann. § 44–96–470(C) (Supp.1997). Only "affected residents" may participate in the facility issues negotiation process, and only citizens of the host county or contiguous counties are considered "affected residents" under the statute. S.C.Code Ann. § 44–96–470(F) (Supp.1997). Thus, for the third round of notice Spartanburg County was obligated to provide notice in its own county and also in the contiguous counties of Cherokee, Greenville, Laurens, and Union.

Appellants argue that "affected counties" should include all counties from which WMSC receives waste. They further argue that Ed Grover, manager of WMSC, admitted that WMSC has customers in eighteen to twenty South Carolina counties from which it receives waste. Thus, Appellants argue

WMSC did not provide notice to all affected counties. We disagree and hold that WMSC properly complied with the notice provisions of the statute when it provided notice to every county within its service area for the first two rounds of notice. We further hold that Spartanburg County, as the host local government, properly notified Spartanburg and its contiguous counties as required for the third round of notice. We find no error.

## II.

■ Appellants next argue the trial judge erred in finding that they were afforded an adjudicatory hearing on the merits of the issuance of the permit. We agree.

In addition to the right to participate in the facility issues negotiation process, the Solid Waste Policy and Management Act also affords citizens the right to an adjudicatory hearing on the merits of the issuance or denial of a landfill permit. South Carolina Code Ann. § 44–96–300(F) (Supp.1996) states:

> The department shall provide for an adjudicatory hearing if an aggrieved party with standing appeals the granting, denial, or granting with conditions of a permit by making a written request to the department for an adjudicatory hearing within fifteen days of receiving the notification required by this section.

Furthermore, the preceding section, South Carolina Code section 44–96–300(E), states that the department "shall comply with the notice and public hearing requirements for administrative proceedings pursuant to the South Carolina Administrative Procedures Act and with public notice requirements for permit decisions required pursuant to this chapter." S.C.Code Ann. § 44–96–300(E) (Supp.1996).

■ It is clear from the language of these two statutes that the citizens are parties with standing to request an adjudicatory hearing on the merits concerning the issuance of a landfill permit. The citizens in the present case were never granted such a hearing. The single hearing officer took testimony and rendered a decision only as to the issues addressed in Appellants' "motions to dismiss." The hearing officer reversed DHEC's issuance of the permit on the basis of procedural, statutory, and due process defects in the permitting process.

In his order, the officer specifically states that the hearing proceeded only on the appellants' pre-trial motions, and that "a full hearing on all of the merits in this proceeding was not warranted, in that sufficient evidence had been received for a recommendation to be made to the DHEC Board." The officer further states that many substantive issues raised by the appellants in their petition were not reached because of the officer's decision to reverse on due process grounds. We therefore hold the trial judge erred in finding appellants were afforded an adjudicatory hearing on the merits of the issuance of the permit.

Furthermore, while the hearing officer's finding that WMSC gave false and misleading information at the public hearings was not relevant or prejudicial to Appellants' rights under the facility issues negotiation process, it was both relevant and prejudicial to Appellants' right to an adjudicatory hearing on the merits of the issuance of the permit. We therefore reverse the finding of the trial judge and remand for Appellants to receive an adjudicatory hearing regarding the merits of the permit.

### III.

Appellants also argue the trial judge erred in finding WMSC complied with South Carolina Code section 44–96–290(E) in demonstrating the need for expansion of the facility. S.C.Code Ann. § 44–96–290(E) (Supp.1996). We agree.

Section 44–96–290(E) states: "No permit to … expand an existing solid waste management facility may be issued until a demonstration of need is approved by the department.… The department shall promulgate regulations to implement this section." At the time WMSC applied for its expansion permit, the demonstration of need was covered by Regulation 61–100, which was repealed in 1996. 25A S.C.Code Ann. Regs. 61–100 (Supp.1990). However, portions of the regulation governing the acceptance of out-of-state waste had been rendered void by case law in 1992. *See Northeast Sanitary Landfill v. South Carolina Dep't of Health & Envtl. Control,* 843 F.Supp. 100, 109–10 (D.S.C.1992) (finding DHEC's application of Regulation 61–100, as it relates to the prohibition of

facilities from receiving waste generated outside a regional area, to be an unconstitutional restraint on interstate commerce).

Testimony by DHEC officials indicated that the only documents regarding demonstration of need included in WMSC's permit application were letters from Newberry and Laurens Counties indicating that waste from those counties might be sent to WMSC. When asked whether there was any document filed in conjunction with the permitting expansion that would meet the qualifications of Regulation 61–100, the DHEC permitting officer stated, "There is no document."

DHEC argues that once South Carolina Code section 44–96–290(G) became effective in 1994, the demonstration of need was no longer a required document. S.C.Code Ann. § 44–96–290(G) (Supp.1996). Instead, DHEC argues that the county has the burden of making a determination of its solid waste needs and has the responsibility of issuing a letter to DHEC stating that the tonnage limit of each facility in the county is consistent with the county's solid waste management plan. DHEC further argues that the repeal of Regulation 61–100 in 1996 is further evidence that a demonstration of need is not required. We disagree.

Section 44–96–290(G) states that a permit to expand an existing landfill will not be issued unless the proposed expansion is consistent with local zoning, land use, and other applicable local ordinances and is consistent with the local or regional solid waste management plan. This requirement is *in addition to* the requirements of South Carolina Code section 44–96–290(E), which makes a demonstration of need approved by DHEC a mandatory requirement before a permit may be issued. S.C.Code Ann. § 44–96–290(E) (Supp.1996). We fail to see how subsection (G) could be interpreted to render subsection (E) obsolete, when both provisions were promulgated at the same time and under a comprehensive statutory framework. Furthermore, although portions of Regulation 61–100 were found unconstitutional pursuant to case law, the Regulation was not officially repealed until 1996. The trial judge therefore erred in finding WMSC had shown a

valid demonstration of need pursuant to the requirements of section 44–96–290(E).

## IV.

■ Appellants argue the trial judge erred in failing to find that the expansion permit was granted to an improper applicant and improper permittee. We disagree.

The 1990 permit under which Palmetto Landfill was operating was issued to the entity "Waste Management of North America, Inc." The 1990 permit states that Waste Management of North America will be responsible for the closure and post-closure monitoring and maintenance of the landfill. In 1992, Waste Management of North America surrendered its authority to do business in South Carolina. The permit for expansion of the landfill is sought by Waste Management of South Carolina, Inc. Appellants contend that this change raises concerns about the financial responsibility of WMSC to the community.

WMSC argues that this issue was rendered moot because of an agreement reached between WMSC and Spartanburg County in 1994 under which WMX Technologies, Inc., the ultimate parent corporation of WMSC, gave a broad financial guarantee taking financial responsibility for the landfill. We find that there is substantial evidence in the record to support the Board's decision that this agreement renders moot any concerns Appellants have about WMSC's financial responsibility to the community.

## V.

■ Finally, Appellants argue the trial judge erred in finding WMSC filed a proper disclosure statement. Appellants contend that DHEC should have required a disclosure statement from Waste Management of North America, Inc., instead of requiring a disclosure statement only from WMSC. Appellants argue that a disclosure statement from Waste Management of North America Inc., with its several hundred subsidiaries, would have revealed a record of extensive environmental violations. We disagree.

Under South Carolina Code section 44–96–300(A), DHEC "may obtain a disclosure statement from the applicant" when a permit is requested. S.C.Code Ann. § 44–96–300(A) (Supp. 1996). The disclosure statement must contain, among other things, a list and explanation of all convictions the entity has had in the past five years for violation of an environmental law punishable by a fine of $5,000 or more, imprisonment for one year or more, or both. S.C.Code Ann. § 44–96–300(A)(4) (Supp.1996). DHEC may deny a permit if it finds by a preponderance of the evidence that the applicant has a documented history of criminal convictions or a documented history of violation of state or federal environmental laws such that the applicant's ability to operate within the law is questionable. S.C.Code Ann. § 44–96–300(B)(4) (Supp.1996).

The trial judge found that WMSC has operated Palmetto Landfill for a sufficient time to leave a record of compliance or noncompliance with environmental regulations. We find there is substantial evidence in the record to support the trial judge's finding that WMSC has operated Palmetto Landfill as a subsidiary of Waste Management of North America since 1979. Furthermore, it is the only entity applying for a permit from DHEC. Thus, we find the trial judge did not err in affirming DHEC's decision to require a disclosure statement only from WMSC.

In conclusion, we reverse the trial judge's finding that Appellants received an adjudicatory hearing on the merits of the issuance of the permit and remand for an adjudicatory hearing. In addition, we reverse the issuance of the permit by DHEC on the ground that WMSC did not comply with the mandatory demonstration of need required by statute before a permit may be issued.

Accordingly, the decision of the special circuit court judge is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HOWELL, C.J., and STILWELL, J., concur.