585 S.E.2d 312

**Sue TENNIS d/b/a Carousel of Learning, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent.**

No. 3670.

Court of Appeals of South Carolina.

Heard June 11, 2003.

Decided Aug. 11, 2003.

---

Rodney F. Pillsbury, Yacobi & Pillsbury, LLC, of Greenville, for Appellant.

Rose Mary McGregor, S.C. Dept. of Social Services, of Columbia, for Respondent.

HEARN, C.J.:

Sue Tennis appeals from an order of the circuit court affirming the Department of Social Services' (DSS) denial of her application to renew her license to operate a day care facility. We reverse and remand.

## FACTS

Sue Tennis's history with DSS dates back to 1986. In that year, DSS "indicated a case" against Tennis for sexual abuse; that case was ultimately dismissed. In 1991, Tennis applied to DSS for a day care license, which DSS denied. This denial was overturned by the family court in 1992 in an order that stated: "DSS did not produce one shred of credible evidence as to why Tennis's application should be denied." Since that order, Tennis has operated the Carousel of Learning day care facility under a provisional license issued by DSS. Until this action, her provisional license has been renewed each time it expired.

Tennis changed the location of her day care in 1995. When she moved, her previous landlord filed charges against her because she removed playground equipment and left behind about a dozen holes on the property. Tennis pled guilty to malicious injury to property by a tenant, which is a misdemeanor. *See* S.C.Code Ann. § 16-11-570 (stating that the injury or destruction of buildings or crops by a tenant is a misdemeanor).

DSS made unannounced visits to Carousel of Learning on June 4, August 5, and October 9, 1997. No deficiencies were found on any of these visits. On October 13, 1997, DSS sent Tennis a notice, which stated: "The Division of Child Day Care Licensing and Regulatory Services has been notified by the South Carolina Law Enforcement Division that you ... have been convicted of a crime which prevents employment in a child day care facility." DSS was mistaken, however, because the crime to which Tennis pled guilty was a misdemeanor and as such, did not prevent her from employment in a day care facility.[1]

---

1. Section 20-7-2725(A) of the South Carolina Code states:

    No day care center ... may employ a person or engage the services of a caregiver ... who has been convicted of (1) a crime listed in Chapter 3 of Title 16, Offenses Against the Person; (2) a crime listed in Chapter 15 of Title 16, Offenses Against Morality and Decency; (3) the crime of contributing to the delinquency of a minor contained in Section 16-17-490; (4) the felonies classified in Section 16-1-10(A) ...; (5) the offenses enumerated in Section 16-1-10(D); or (6) a criminal offense similar in nature to the crimes listed in this subsection committed in other jurisdiction or under federal law.

In December of 1997, DSS visited Carousel of Learning in response to an anonymous complaint. The complaint was not substantiated and no deficiencies were noted. Another unannounced visit was made on February 2, 1998. Again, no deficiencies were found.

On May 21, 1998, DSS visited the facility and cited it for three violations: (1) having only one caregiver on the premises with 15 children; (2) not designating a director; and (3) failing to meet the fire codes because four infants were in a room not designated for infants. At the time of this visit, DSS was operating under the false assumption that Tennis was a convicted felon who could not work at a day care facility. Thus, even when Tennis was at the facility, she was not counted as a supervisor or counted in the child-to-staff ratios. If Tennis had been present on May 21, the only deficiency would have been the four infants in a non-designated room.

Again on June 23, 1998, DSS made an unannounced visit and found inappropriate ratios. However, Tennis was at the facility that day and was not counted toward these ratios.

On July 24, 1998, Tennis initiated a meeting with DSS in order to clear up the confusion regarding her guilty plea. She brought in papers that listed S.C.Code Ann. § 16–11–570 as the statute under which she pled guilty. That statute explicitly states that malicious injury to property by a tenant is a misdemeanor. Despite this meeting, DSS maintained its position that Tennis's criminal background prevented her from being employed at the day care.

From August of 1998 until November of 1999, DSS made numerous unannounced visits to Tennis's day care. DSS found no deficiencies on five of those visits.[2] On four of the visits in which deficiencies were found, there would have been no deficiency if DSS had counted Tennis toward the child-to-staff ratios.[3] On two visits, however, there were confirmed violations regardless of whether Tennis was counted. These violations occurred on July 15 and July 30, 1999.

---

**2.** The dates of the visits with no deficiencies are: 9/1/98, 10/11/98, 5/12/99, 6/2/99, and 6/23/99.

**3.** The dates where there would have been no deficiency if Tennis had been counted are: 9/17/98, 4/12/99, 5/4/99, and 7/20/99.

During the July 15, 1999 visit, DSS found two caregivers in one room with twenty-four children. The room was designated for only twelve children. Tennis admitted the violation but explained that her facility was short-handed because an employee had quit unexpectedly. On July 30, 1999, DSS found violations because there were fourteen children in a room designated for twelve, a caregiver did not have her fingerprints on file, no menu was posted, and the sleeping mats were not labeled. DSS also found that there was no designated director and there were inadequate child-to-staff ratios; however, it is unclear whether these violations would have existed had Tennis been counted. In regards to the missing fingerprints, Tennis explained the employee in violation was a recent high school graduate who was enrolled in early childhood development classes at the local community college. To be enrolled in these classes, students needed to submit their fingerprints to SLED, and Tennis assumed that the employee had already been fingerprinted. The employee eventually did submit her fingerprints, and she had no criminal history.

In November of 1999, DSS sent Tennis a letter denying Tennis's application for renewal of her day care license. The letter listed the following as the basis for denial:

1. Ms. Sue Tennis, owner of the facility, continues to provide direct care for children after having been notified by certified mail on October 3, 1997(sic) and August 17, 1998, that she had been convicted of a crime which prevented her from employment in a child day care facility per Section 20–7–2725 of the 1976 Code of Laws of South Carolina as amended.

2. The facility has continued to employ a caregiver, Ms. Wendy Wilson, in direct care of children who failed to undergo a State and Federal fingerprint review in violation of Section 20–7–2740(F) of the South Carolina Day Care Licensing Law.

3. The operator has failed to correct deficiencies within the time frames prescribed by the Department after being given timely notice per Section 20–7–2750(D) of the South Carolina Day Care Licensing Law. Inadequate supervision was found on visits by Department staff on February 12, 1997, May 23, 1997, May 21, 1998, June 23, 1998, August 18,

1998, April 12, 1999, July 15, 1999, July 20, 1999, and July 30, 1999.

After sending this letter, DSS made two additional unannounced visits in March and April of 2000, and found no violations on either visit. Finally, on August 16, 2000, a hearing was held.

In the Final Administrative Order, the State Director of DSS found that DSS properly denied the renewal based on the violations from July 15, 1999 and July 30, 1999. The director found the health and safety of the children in the day care were placed in jeopardy by the failure to maintain adequate staffing ratios and the failure to have a caregiver submit to a fingerprint check.

The circuit court reviewed the case and found that the decision to deny the renewal was based upon "inadequate ratios and other regulatory non-compliance issues as noted in the Final Administrative Order. On the two dates in question, severe ratio deficiencies were found." The court acknowledged that DSS had improperly excluded Tennis when calculating supervision ratios but concluded the "agency's determination was not tainted by any error of law, was not clearly erroneous in view of the reliable and substantial evidence presented, and was not arbitrary, capricious or an abuse of discretion." This appeal follows.

## STANDARD OF REVIEW

Under the APA, "[t]his court will not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." *Leventis v. South Carolina Dep't of Health & Envtl. Control,* 340 S.C. 118, 130, 530 S.E.2d 643, 649–50 (Ct.App.2000) (quoting *Ballenger v. South Carolina Dep't of Health and Envtl. Control,* 331 S.C. 247, 251, 500 S.E.2d 183, 185 (Ct.App.1998); S.C.Code Ann. § 1–23–380 (Supp.2002)).

We will not overrule an agency's decision unless:

substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Leventis*, 340 S.C. at 130, 530 S.E.2d at 650 (citing S.C.Code Ann. § 1–23–380(A)(6) (Supp.2002); *Ballenger*, 331 S.C. at 251, 500 S.E.2d at 185).

"Substantial evidence is not a mere scintilla of evidence nor evidence viewed blindly from one side, but is evidence which, when considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached." *Waters v. South Carolina Land Res. Conservation Comm'n*, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996) (quoting *Palmetto Alliance, Inc. v. South Carolina Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984)). "The possibility of drawing two inconsistent conclusions from the evidence will not mean the agency's conclusion was unsupported by substantial evidence." *Id.* "Furthermore, the burden is on appellants to prove convincingly that the agency's decision is unsupported by the evidence." *Id.* (citing *Hamm v. AT & T*, 302 S.C. 210, 394 S.E.2d 842 (1990)).

## LAW/ANALYSIS

### I. Denial of Tennis's Day Care License Renewal

Tennis maintains there was not substantial evidence to support the director's decision not to renew her license. She contends the decision was arbitrary and based upon DSS's incorrect assumption that she was convicted of a felony. We agree.

Looking at the record as a whole, the overwhelming evidence indicates DSS repeatedly cited Tennis for violations that were not truly violations. Nearly every month for two years, DSS made unannounced visits to the day care center, and several months, DSS visited more than one time. These visits were often predicated on DSS's incorrect assessment that child-to-staff ratios at the facility were inadequate when in fact, if DSS had counted Tennis toward those ratios, there

would have been no violation. In light of that error and considering Tennis's history with DSS, the evidence on the whole record reflects a history of DSS's bias against Tennis.

In its letter to Tennis notifying her of its decision to deny the renewal of her license, DSS lists Tennis's status as a felon as its first reason for non-renewal. The record, however, clearly indicates that Tennis was not a felon.

The next reason for denial listed in the letter is the "continued [employment of] a caregiver ... in direct care of children who failed to undergo a State and Federal fingerprint review...." At the hearing, Tennis admitted this violation, explained how it happened, and presented evidence that the caregiver was fingerprinted after she had been cited for this violation. The fingerprinting results revealed the caregiver had no criminal record.

Finally, the letter refers to dates upon which DSS made visits and found violations. At least one date listed was not even a day upon which a visit was made,[4] and a majority of the dates listed would not have been violations if DSS had counted Tennis in its child-to-staff ratios.

Upon consideration of the entire record, we hold the decision of DSS to deny Tennis's renewal of her day care license was clearly erroneous in light of the reliable, probative, and substantial evidence. In 1992, the family court found DSS presented "not one shred" of evidence supporting the denial of Tennis's license. Since then, it appears DSS has attempted to bolster its case against Tennis by making frequent unannounced visits and repeatedly citing her for violations that did not exist. Based on this history, we do not believe the violations on July 15th and July 30th amount to "substantial" or "reliable" evidence.

## II. Attorney's Fees

■■■■ Tennis next argues that if the circuit court's decision is reversed, she is entitled to attorney's fees pursuant to S.C. Ann. § 15–77–300 (Supp.2002). Under that statute, a party

---

4. In its letter denying Tennis's license renewal, DSS listed May 23, 1997 as a day upon which a violation was found; however, no visit was made on that date. Instead, DSS received an anonymous complaint on May 23rd, and when DSS followed-up the complaint with a visit on June 4, 1997, no deficiencies were found.

defending an action brought by the State may recover attorneys fees and costs if three prerequisites are met: first, the contesting party must be the prevailing party; second, the court must find that the agency acted without substantial justification in pressing its claim against the party; and third, the court must find that there are no special circumstances that would make the award of attorney's fees unjust. *Richland County v. Kaiser,* 351 S.C. 89, 96, 567 S.E.2d 260, 264 (Ct.App.2002). Based on our decision to reverse the denial of Tennis's day care license and there being no evidence that makes the award of attorneys fees unjust, we find Tennis is entitled to attorneys fees incurred during the litigation pursuant to 15–77–300. *See McDowell v. South Carolina Dept. of Soc. Servs.,* 304 S.C. 539, 543, 405 S.E.2d 830, 833 (1991) (finding that although 15–77–300 entitled appellant to attorneys fees for the action for judicial review in circuit court, appellant was not entitled to attorneys fees for the hearing before DSS because "the agency was not pressing its claim in litigation against appellant but was merely functioning as an administrative decision-maker").

Accordingly, the decision of the circuit court is **REVERSED,** and we **REMAND** the case to the circuit court to determine the amount of attorney's fees owed.

**REVERSED and REMANDED.**

CONNOR and STILWELL, J.J. concur.