PREHEARING REPORT

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jean L. Schmidt Appellant,
v.
Anderson Merchandisers, Employer, and American Home Assurance Company, Carrier
Respondents,
 
 
 

Appeal From Charleston County
 Thomas L. Hughston, Jr., Circuit Court Judge 

Unpublished Opinion No. 2006-UP-408
Submitted October 1, 2006  Filed December 12, 2006

AFFIRMED

 
 
 
Dennis R. Toney, Jr., and J. Kevin Holmes, of Charleston, for Appellant.
Stephen L. Brown, F. Drake Rogers, and Matthew K. Mahoney, of Charleston, for Respondents.
 
 
 

PER CURIAM:  Jean L. Schmidt appeals from a circuit court order affirming the order of The South Carolina Workers Compensation Commission (Appellate Panel), denying Schmidts claim for back and neck injuries and awarding permanent partial disability for Schmidts carpal tunnel syndrome claim.  We affirm.[1]
FACTS
Jean L. Schmidt, the fifty-six year old claimant, worked for employer and respondent Anderson Merchandisers as a sales merchandiser for nearly seven years, until May 11, 2001.  Schmidt was responsible for the inventory of the book departments and music departments in several Wal-Mart stores.  Her job duties consisted of unloading boxes of merchandise from a pallet onto a cart, then using the cart to take the boxes inside the store to be opened and shelved.  Schmidts job thus entailed regularly moving boxes weighing between five and thirty-five pounds.  
Schmidt filed two separate workers compensation claims against Anderson Merchandisers: one for carpal tunnel syndrome and the other for neck and back injuries.  The record supplies an extensive medical history relevant to these injuries.
Schmidt has a degenerative disc disease that has necessitated surgeries of the cervical and lumbar areas of her spine.  Schmidts first back strain occurred in 1979, long before she started working for Anderson Merchandisers.  Schmidt testified that she had sporadic back problems until 1996, when she began noticing a worsening of her condition when she was required to do lifting.  Schmidt testified that the aggravation of her problems resulted in a July 1996 lower spine surgical procedure in Tennessee.  , She suffered a low back strain in an early 1997 work-related automobile accident, and a neck strain in another work-related accident in December of 1997.  She was soon transferred to South Carolina, where she began treatment with a new spine doctor, Dr. Poletti, in November of 1998.  Later, on June 14, 1999, she fell at work and injured her lower back and left leg.  Schmidt continued to have lower back problems, and in October of 1999, she underwent lumbar spine fusion surgery.  After this surgery, Dr. Poletti restricted Schmidt from lifting more than ten pounds, and required alternative sitting and standing.  Anderson Merchandisers accommodated these restrictions by providing trainees to assist her for several months.  
Schmidt was diagnosed with breast cancer in 2000.  While undergoing a lumpectomy and chemotherapy treatments, she began having shoulder, arm and hand pain, which eventually made her unable to continue holding objects.  A neurologist diagnosed her with bilateral carpal tunnel syndrome in early 2001.  Schmidt filed a workers compensation claim based upon this condition after her health insurance claim was denied.  
Meanwhile, Schmidt testified that in 2000 she began to experience pain in the cervical region of her spine.  Dr. Poletti advised her to seek short or long-term disability, and suggested she limit her physical activities.  Despite this advice, Schmidt wished to continue working.  Dr. Poletti thus agreed to perform cervical spine fusion surgery.  Schmidt testified that she informed Anderson Merchandisers she would be out of work for six to eight weeks following the surgery.  She last worked on May 11, 2001, and underwent the spine fusion surgery on May 14, 2001.  On June 5, 2001, Schmidt underwent carpal tunnel surgery on her right arm, and on July 10, 2001, she underwent the same procedure on her left arm.  On July 16, 2001, Poletti advised her not to return to work, and Schmidt notified Anderson Merchandisers that she would not.  
Schmidt applied and was accepted for social security disability as a result of the severe degenerative disc disease and the surgeries of her lumbar and spine.  She then underwent a second cervical fusion procedure in October of 2001.  Schmidts carpal tunnel surgeon released her to full duty on August 28, 2001, and on November 15, 2001, reported that Schmidt had reached maximum medical improvement, with five percent permanent impairments to each of her arms.  
At the hearing before the single commissioner, Schmidt stated she was aware as far back as 1996 that the lifting she performed at work was harming her back.  She also admitted knowledge of Anderson Merchandisers policy requiring her to notify Steve Cohen, the risk control manager, of any work-related injury.  Schmidt had numerous communications with Cohen regarding her health problems and regarding other job incidents, but never reported any work-related injury involving her back and/or neck to him.  
Schmidt forwarded to Anderson Merchandisers human resource department a letter from Dr. Poletti dated July 16, 2001.  The letter stated in pertinent part: Ms. Schmidt has pain in her neck and in her low back.  There was no specific mechanism of injury that would cause this.  Repetitive trauma could theoretically contribute to an aggravation of this, but overall spinal condition is such that it will disable her.    Steve Cohen testified that Dr. Polettis letter was not sent to his department because nothing in it indicated a work-related claim.  He stated that the first notice his risk-management department received of Schmidts workers compensation claim involving her back was in July of 2002, when her claim was filed.  
At the hearing before the single commissioner, Anderson Merchandisers admitted the carpal tunnel claims, but specifically denied the neck and back injury claims.  For her carpal tunnel claim, Schmidt submitted a second amended Form 50 with a November 27, 2000, date of injury and a $633.07 weekly wage.  In his argument before the single commissioner, Schmidts attorney stated: We contend that the Claimaints average weekly wage and compensation rate for the 2000 accident is at a minimal average weekly wage of $633.07 and the compensation rate being $422.07.  
The single commissioner awarded permanent partial disability for the carpal tunnel claim and awarded the requested amount, but denied the claim for back and neck injuries. The commissioner gave two reasons for denying the back and neck claim: first, the commissioner found Schmidt did not satisfy her burden of proving compensable injury by accident or by repetitive trauma; and second, the commissioner found Schmidt did not give notice to Anderson Merchandisers of her neck and back injuries.  Schmidt appealed, arguing that the commissioner erred in finding her neck and back injuries were not work-related, that she had indeed provided proper notice of her back and neck injuries, and that the compensation rate awarded for her carpal tunnel injury was incorrect.  The Appellate Panel and circuit court affirmed the single commissioners order.  This appeal followed. 
STANDARD OF REVIEW
The Administrative Procedures Act establishes the standard of review for decisions of the [Appellate Panel].  Lark v. Bi-Lo, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981).  The findings of the Appellate Panel will not be set aside if the findings are supported by substantial evidence and are not controlled by legal error.  Gray v. Club Group, Ltd., 339 S.C. 173, 183, 528 S.E.2d 435, 440 (Ct. App. 2000).  
Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action.  Bass v. Isochem, 365 S.C. 454, 468, 617 S.E.2d 369, 376 (2005); Pratt v. Morris Roofing, Inc., 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004).  Where there is a conflict in the evidence, the findings of fact of the Appellate Panel are conclusive.  Glover v. Columbia Hosp. of Richland County, 236 S.C. 410, 114 S.E.2d 565, 569 (1960); Alexander v. Forklifts Unlimited, 365 S.C. 509, 514, 618 S.E.2d 307, 309 (Ct. App. 2005).  In an appeal from the Appellate Panel, the appellate court will not substitute its judgment for that of the Panel as to the weight of evidence on questions of fact, but may reverse where the decision is affected by error of law.  White v. Medical Univ. of S.C., 355 S.C. 560, 564, 586 S.E.2d 157, 169 (Ct. App. 2003).  However, construction of a statute by an agency charged with its administration will be accorded the most respectful consideration and will not by overruled absent compelling reasons.  Glover by Cauthen v. Suitt Const. Co., 318 S.C. 465, 469, 458 S.E.2d 535, 537 (1995).  The burden is on appellants to prove the agencys decision is unsupported by evidence.  Waters v. S.C. Land Res. Conservation Commn, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996); Tennis v. S.C. Dept of Soc. Servs., 355 S.C. 551, 558, 585 S.E.2d 312, 316 (Ct. App. 2003).
LAW/ANALYSIS
I.       Causation
Schmidt argues the Appellate Panel erred in finding there was no medical evidence to show a causal connection between Schmidts back and neck problems and her work activities.  Specifically, she contends that the Appellate Panel relied on a legally erroneous assumption that medical testimony is required to show a causal-connection, and that absent such medical testimony, there can be no finding of causation.  Further, she argues the finding of no medical evidence establishing causation is not supported by substantial evidence.  We disagree.
Schmidts first argument has no merit.  An objective reading of the Appellate Panels straightforward finding that there is no medical evidence in the record that indicates a causal connection between the Claimants back and neck problems and her work activities provides no implication of a legal requirement of medical evidence.  Review of the record, of the circuit courts order, and of the Appellate Panels order reveals that all findings were based on consideration of the facts and circumstances of the case as a whole, including the medical evidence and the testimony of both Schmidt and Steve Cohen.
Schmidts argument that the Appellate Panels finding was not supported by substantial evidence in the record is also unpersuasive.  Throughout Schmidts years of treatment to her neck and back, no treating physician has ever indicated that Schmidts work at Anderson Merchandisers aggravated or worsened a previous condition.  The only medical testimony Schmidt relies upon to link her neck and back injuries to her work is found in Dr. Polettis letter, which states:  There is no specific mechanism of injury that would cause this. Repetitive trauma could theoretically contribute to an aggravation of this but her overall spinal condition is such that it will disable her.  Schmidt contends that these statements constituted a cautious opinion that [Schmidts] work was contributing to an aggravation of her pre-existing spine condition.  However Polettis letter clearly avoids advancing an opinion of causation by merely stating [r]epetitive trauma could theoretically contribute to an aggravation. (emphasis added).  Further, Poletti never opines that Schmidts work regimen entailed such repetitive trauma. This less presumptuous reading of the letter is buttressed by consideration of the two subsequent letters Dr. Poletti wrote on behalf of Schmidt to the Social Security Administration in which again he mentioned her various problems without ever relating them to her employment.
Therefore, we find there is substantial evidence on the record to support the Appellate Panels finding that Schmidts back injuries were not caused by her work at Anderson Merchandisers.
II.      Compensation Rate
Schmidt next argues the Appellate Panel erred in the amount it awarded in compensation for her carpal tunnel claim.  Schmidt contends that the Appellate Panel should not have calculated her compensation rate based on the November 27, 2000, date of injury she submitted.  Rather, Schmidt suggests the calculation should be based on the average weekly wage for the fifty-two weeks prior to her last day of work on May 11, 2001.  On appeal, the circuit court held this issue was not preserved.  We agree.
We note that it was Schmidt who provided the November 27, 2000 date of injury, the $633.07 average weekly wage, and the $422.07 compensation rate on her filings.  Furthermore, Schmidt specifically requested the same compensation rate before the single commissioner at the hearing, and conceded the average weekly wage amount from which it was derived.  Because Schmidt received the compensation she requested, and conceded the average weekly wage amount from which it is derived, this issue is not preserved for appeal.  See TNS Mills, Inc. v. South Carolina Dept of Revenue, 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998)(An issue conceded in a lower court may not be argued on appeal.); Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 476, 629 S.E.2d 653, 670 (2006)(A party may not complain on appeal of error or object to a trial procedure which his own conduct has induced); and Harrison v. Bevilacqua, 354 S.C. 129, 139, 580 S.C. 109, 115 (2003)(Petitioner cannot now complain the trial court erred when it took her own suggestion).  Therefore, we affirm the circuit courts compensation award of $422.07 per week. 
CONCLUSION 
Based on the foregoing, the decision of the circuit court is hereby
AFFIRMED.[2]
HEARN, C.J., and STILWELL and KITTREDGE, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] In light of our disposition of Schmidts back and neck claim based on the causation issue, we need not address Schmidts arguments relating to notice.  See Whiteside v. Cherokee County Sch. Dist. No. One, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating the appellate court need not address remaining issues when resolution of a prior issue is dispositive).